No. 44,417

State of Kansas, *Appellee*, v. Richard Lee McCarther, *Appellant*.

(416 P. 2d 290)

Opinion filed July 14, 1966.

*G. Edmond Hayes*, of Wichita, argued the cause and was on the brief for the appellant.

*Martin E. Updegraff*, Deputy County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal in a criminal action in which Richard Lee McCarther (defendant-appellant) was convicted in the district court of Sedgwick County, Kansas, upon three counts

charged in the information as follows: Count I, robbery in the first degree in violation of G. S. 1949 (now K. S. A.) 21-527; Count II, possessing and owning a firearm after conviction of felony in violation of G. S. 1961 Supp. (now K. S. A.) 21-2611; and Count III, felonious assault in violation of G. S. 1949 (now K. S. A.) 21-431. Upon conviction the appellant was sentenced to the Kansas State Penitentiary at Lansing where he is presently confined.

Appeal has been duly perfected to this court assigning twenty-three specifications of trial error.

We are confronted at the outset by the appellee's motion to dismiss the appeal on the ground the appellant, after conviction, made an application for parole in the lower court which was denied.

This court has heretofore held when a defendant in a criminal action, following conviction and sentence in the district court, voluntarily makes application to the district court for parole, he thereby recognizes the validity of the judgment and acquiesces therein, which renders the judgment unassailable and precludes appellate review of the conviction. (*State v. Mooneyham*, 192 Kan. 620, 390 P. 2d 215, cert. den. 377 U. S. 958, 12 L. Ed. 2d 502, 84 S. Ct. 1640; *State v. Irish*, 193 Kan. 533, 393 P. 2d 1015; *State v. Robertson*, 193 Kan. 668, 396 P. 2d 323; *State v. Baier*, 194 Kan. 517, 399 P. 2d 559; *Webb v. State*, 195 Kan. 728, 408 P. 2d 662; *Groene v. State*, 195 Kan. 740, 408 P. 2d 580; *State v. Hasty*, 196 Kan. 5, 410 P. 2d 318; *State v. Walker*, 196 Kan. 464, 413 P. 2d 128; and see, *Mooneyham v. State of Kansas*, 339 F. 2d 209 [10th Cir. 1964].)

Upon reconsideration by the court, as presently constituted, *State v. Mooneyham*, supra, and all decisions adhering thereto are overruled. The majority of the members of the court have concluded that it is wrong, both as a matter of principle and of law, to say that just because a defendant in a criminal action applies for parole he acquiesces in the judgment, and thereby is denied the right to appeal. The court now holds that the application of a defendant in a criminal action for parole or clemency may not be considered as an acquiescence in the judgment of conviction; it is simply the exercise of a statutory right of long standing. K. S. A. 62-1701 provides in part, "An appeal to the supreme court may be taken by the defendant as a matter of right from any judgment against him."

Reference is made to *State v. Seward*, 163 Kan. 136, 181 P. 2d 478; *Sanders v. State*, 195 Kan. 701, 408 P. 2d 587, cert. den. 383 U. S. 961, 16 L. Ed. 2d 303, 86 S. Ct. 1230; and *Sanders v. State*, 196

Kan. 181, 408 P. 2d 587, where the *Mooneyham* rule was not applied.

On the 11th day of October, 1964, at approximately 12:20 a. m., a colored man clad in a long three-quarter length dark coat, wearing a woman's cap with tassels hanging down all around, and a bandana handkerchief over his face, confronted William J. Wegerle, a night watchman at Razook's Thriftway Supermarket located at 2101 East 21st Street, Wichita, Sedgwick County, Kansas, and held a pistol against his head. After a scuffle Wegerle was struck twice on the head and subdued, whereupon he was placed inside the rest room at the supermarket and barricaded inside by the attacker who stacked boxes against the door. Wegerle heard the attacker rummaging around in the store for some time thereafter, but by the time Wegerle had freed himself and called the police, the attacker had fled.

The owner of the store, Jimmy Razook, had left the store at approximately 3:30 in the afternoon prior to the incident. The next morning when he returned he determined from the records in the store that there was the sum of $9,463 missing; also missing were money order blanks, the money order machine which stamps the money orders, and a little bag or suitcase that his children had given to him for Christmas.

On the same day, approximately twenty-three hours later, at 11:30 p. m., Officer Hawkins and Officer Bolin of the Wichita police department answered a call concerning a suspicious character parked at the rear of 1253 North Chautauqua in the city of Wichita. There they found a colored man lying in his automobile who identified himself as Roney H. Gregory of Wichita. Upon inquiry by the officers, Gregory informed them that the car belonged to a friend; that this friend had gone into a house in the 1200 block on Chautauqua; and that he was lying in the car waiting for his friend to return.

The officers thereupon undertook to confirm this explanation by taking Gregory around to the four houses on the north end of the 1200 block on Chautauqua. They approached these houses one at a time with Gregory, and at each house they asked the person who answered the door if he or she knew the man who identified himself as Gregory, or if he or she had any visitors in the house who might know him. All denied knowing the man or having any visitors.

Thereupon Officers Hawkins and Bolin took Gregory back to the

vicinity of the automobile in which he was found. Officer Hawkins took Gregory to the patrol car, while Officer Bolin went to check the parked automobile in which Gregory was found. Officer Hawkins took Gregory to the right-hand side of the patrol car, opened the door and Gregory got in. Officer Hawkins then walked around the rear of the patrol car and got in the front seat on the driver's side. He suspected that Gregory had something in his pocket and saw his right arm drop to his side. In an effort by Officer Hawkins to ascertain what was in Gregory's pocket, Gregory pulled a .38 caliber revolver pointing it toward Officer Hawkins' head. Officer Hawkins grabbed the cylinder and part of the barrel of Gregory's gun, at which time they wrestled in the car and out through the right front door onto the north side of the street. Officer Hawkins called for Officer Bolin, who was checking Gregory's parked automobile in the alley, as he was trying to hold Gregory's arm, and also hold his own gun, which Gregory was attempting to get, in its holster. The two officers then wrested the pistol from Gregory and subdued him, placing him face down on the ground with his hands cuffed behind his back.

After Gregory was handcuffed and lying face down on the ground, interrogation took place during which Gregory identified himself as Richard Lee McCarther; confessed that he had robbed Razook's store; that he had struck the night watchman at Razook's on the head with his pistol; and stated that the money was hidden in the 1200 block on North Kansas. (Investigation by the police at the address given did not reveal any money.) During this interrogation both officers were less than three feet from the appellant.

Officer Hawkins admitted on cross examination, after the appellant had been subdued and was lying face down on the ground with his hands cuffed behind his back, that he had drawn his own pistol out of its holster, held it to the appellant's head and said, "After a deal like this, I should blow this punk's brains out." He also admitted on cross examination that during the course of this interrogation, he at one time raised his foot and held it over the appellant's head.

The evidence establishes beyond any doubt that it was not until after the appellant was lying face down upon the ground with his hands cuffed behind his back that he was questioned and asked whether he was the one who had robbed Razook's market the night

before. Officer Hawkins testified that the appellant answered by saying, "Yes, he was." The officers also testified that the appellant in the course of this interrogation admitted he had hit the night watchman at Razook's with the weapon they had wrested from him.

Wegerle, the night watchman at Razook's, could not identify the appellant. He did, however, testify that the voice of his attacker was soft and sounded like the voice of the appellant. Wegerle also identified clothing found in a duffle bag in the trunk of the appellant's parked vehicle as looking like the clothing which was worn by his attacker.

The sum of approximately $2,000 was found in the appellant's parked vehicle, but no other items lost in the robbery at Razook's store were recovered or identified. The money was not identified as coming from Razook's store, other than the inference which might be drawn from the fact that Razook testified over $9,000 was missing.

Concerning the interrogation of the appellant by the officers after he was face down on the ground with his hands cuffed behind his back, Officer Bolin on cross examination testified:

"Q. Would you say that Mr. Hawkins's demeanor, his mode of speech was visiting as opposed to threatening?

"A. Visiting as opposed to threatening, I'm sure there was a bit of threat imposed, implied.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Do you recall having seen Officer Hawkins at the time conduct himself in such a manner that would imply a threat of bodily injury to the defendant?

"A. Officer Hawkins did have his weapon unholstered, and I am sure this could be taken as implication of threat."

A disinterested witness, Payton Chairs, called by the state, observed the scuffle between the officers and the appellant on the night of the appellant's arrest. He testified:

"Q. Tell us what you saw.

"A. One of the officers was on top of McCarther with his arm twisted over his back, and I heard one of them ask him something and I heard him reply last night, and he asked him, 'Where is the money,' and I heard him reply, 'In my room,' and that's all I heard.

"Q. Well, was there a lot of talking going on at that time?

"A. Well, they was asking him questions, but those were the particular ones that stuck in my mind. The rest I can't remember.

"Q. And did you continue to watch them at that time?

"A. Well, yes, I did. Well, a few minutes later police cars swarmed the area, and then you couldn't tell what was going on then."

The primary question in this case concerns the admissibility of the confession made by the appellant in evidence. The trial court overruled the appellant's objection to the statements elicited from him by Officers Bolin and Hawkins at the time he was lying face down on the ground with his hands cuffed behind his back.

The trial court, without determining in a preliminary manner the voluntary nature of the confession, permitted the jury to hear it, together with other statements made by the appellant when he was interrogated under the foregoing circumstances, and attempted to resolve the question by submitting instruction No. 15A to the jury. It reads:

"You are further instructed that there has been testimony concerning admissions by the defendant admitted into evidence. If you find that said admissions were voluntarily made without threats or promises of freedom from punishment or of a lighter punishment, such admissions may be considered by the jury in determining the question of the defendant's guilt or innocence of the crimes charged, and the weight and degree of credit to be given to this evidence is wholly in the discretion of the jury.

"If you find that such admissions were not voluntarily made or were made as a result of threats or promises of freedom from punishment or of a lighter punishment, such admissions must be disregarded by the jury in determining the question of the defendant's guilt or innocence of the crimes charged."

Aside from the confession and admissions made by the appellant, which the trial court admitted in evidence, the identification of the appellant with the crimes charged in Counts I and III was at best very meager.

Where a person is on trial for a crime, evidence of a confession of guilt of the crime previously made by such person is in general not admissible unless it appears that the confession was entirely voluntary. If such confession is made while the party is under arrest or charged with a crime, evidence of the confession is not admissible on the trial unless it is made to clearly appear that the party was fully advised of his rights, and that after being so advised, the confession of guilt was freely and voluntarily made under circumstances that afforded no undue influence in procuring the confession. Furthermore, the burden of proof is upon the state to show that any confession of a crime by the accused was freely and voluntarily made *before the confession is admissible in evidence.* In this connection it is the duty of the trial court, before admitting the confession in evidence, to hear evidence and decide as a preliminary matter whether the confession was freely and voluntarily

made without force or coercion. (*State v. Seward*, 163 Kan. 136, 181 P. 2d 478.)

There is little doubt the confession elicited from the appellant in the instant case by Officers Hawkins and Bolin, after the appellant was lying face down with his hands cuffed behind his back, was elicited by force or threats which coerced the appellant. As a result of such undue influence, the confession must be regarded as having been involuntarily made. Therefore, it was not admissible in evidence.

When coercive tactics are used by law enforcement officials to obtain a confession, this court has used some strong language. In *Crebs v. Amrine*, 153 Kan. 736, 113 P. 2d 1084, this court said:

"Before concluding, however, we take this opportunity to restate the attitude of this court in respect to official misconduct which savors in the least of 'third degree' practices. It is the duty of county attorneys, attorneys general, examining magistrates, district courts and the judges thereof, to see to it that nothing of that kind can be practiced with impunity in Kansas. There is no authority in law and none in common humanity for conducting midnight seances, wherein persons arrested on criminal charges are misused in the slightest degree, and none for holding persons in custody more than a few hours at most without a warrant for their arrest as contemplated by law. When this court gets a chance to show its attitude on this monstrous and un-American practice, we are not slow to do so. . . ." (p. 746.)

For other cases in which this court has undertaken to express itself concerning misconduct of law enforcement officials, see *State, ex rel., v. Jackson*, 139 Kan. 744, 33 P. 2d 118; and *Claflin v. State*, 154 Kan. 452, 119 P. 2d 540.

The admissibility of confessions and admissions in evidence is covered by the rules of evidence embodied in our statutes.

K. S. A. 60-460 provides in part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

.    .    .    .    .    .    .    .    .    .    .    .

"(f) *Confessions.* In a criminal proceeding as against the accused, a previous statement by him relative to the offense charged if, and only if, the judge finds that the accused when making the statement was conscious and was capable of understanding what he said and did, and that he was not induced to make the statement (1) under compulsion or by infliction or threats of infliction of suffering upon him or another, or by prolonged interrogation under such circumstances as to render the statement involuntary, or (2) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same;

"(g) *Admissions by parties.* As against himself a statement by a person who is a party to the action in his individual or a representative capacity and if the latter, who was acting in such representative capacity in making the statement."

The rules of evidence under article 4 of the code of civil procedure (L. 1963, ch. 303) are designed to have application to every proceeding, both criminal and civil, conducted by or under the supervision of the court, in which evidence is produced, except to the extent to which they may be relaxed by other procedural rule or statute applicable to the specific situation. (*State v. Wright,* 194 Kan. 271, 398 P. 2d 339; and K. S. A. 60-402.)

We hold the trial court's admission of the appellant's involuntary confession in evidence was erroneous and constitutes reversible error.

In view of our decision on the foregoing point, it is unnecessary to discuss other specifications of error assigned by the appellant.

Any discussion undertaken in this opinion concerning statements elicited by Officer Triplett at the police station the morning following the appellant's arrest, or statements later made to Mr. Razook by the appellant while in custody of the police, overheard by detectives of the police department of the city of Wichita, would be purely academic in view of recent decisions by the United States Supreme Court. (*Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; and *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.)

The evidence in this case which the trial court erroneously admitted was confined to Count I, robbery in the first degree, and Count III, felonious assault. We have carefully reviewed the record and find the evidence supporting the appellant's conviction on Count II, possessing and owning a firearm after conviction of felony, was sufficient.

Points which the appellant assigns as error concerning Count II either were not raised in the lower court by a motion for a new trial, and are therefore not reviewable on appeal, or the appellant has failed to present a sufficient record on appeal to make it affirmatively appear that reversible error was committed by the trial court. Accordingly, the appellant's conviction on Count II must be affirmed.

The judgment of the lower court is affirmed as to the appellant's conviction on Count II, and reversed as to his convictions on

Counts I and III, with directions to grant a new trial on Counts I and III in the light of *Miranda v. Arizona,* supra; *Johnson v. New Jersey,* supra; and K. S. A. 60-455.

KAUL, J. (dissenting): I dissent from Syllabus ¶ 1 and the related portions of the court's opinion overruling *State v. Mooneyham,* 192 Kan. 620, 390 P. 2d 215, cert. den. 377 U. S. 958, 12 L. Ed. 2d 502, 84 S. Ct. 1640, and the subsequent decisions of this court adhering thereto.

The rule in *Mooneyham* was announced by this court on March 7, 1964, subsequently certiorari was denied by the United States Supreme Court. (*Mooneyham v. Kansas,* 377 U. S. 958, 12 L. Ed. 2d 502, 84 S. Ct. 1640.) The rule was reviewed by the Tenth Circuit Court of Appeals in *Mooneyham v. State of Kansas,* 339 F. 2d 209 and found not to be in violation of the fundamental rights guaranteed by the Constitution of the United States (p. 210). The rule has now become a settled and integral part of the system of criminal appellate review and the limitations and conditions inherent therein provided for by statute and case law in this jurisdiction.

Our legislature gave a defendant the right to appeal from any judgment against him in K. S. A. 62-1701. In the probation and parole act (K. S. A. 62-2226 to 62-2255, incl.) the legislature provided procedure by which probation and parole could be granted to "persons convicted of crime" (62-2226, *supra*) or a person "found guilty of a crime" (62 2239, *supra*). It appears to me that 62-1701, *supra,* was intended as a means for finally adjudicating the guilt or innocence of a defendant while K. S. A. 62-2239, *et seq.,* was intended to provide for the constructive rehabilitation of a person finally convicted of a crime. There is no legislative directive in K. S. A. 62-2226, *et seq.,* that recourse thereunder should not be deemed inconsistent with taking an appeal under 62-1701, *supra.* Some states have so provided, 4 Am. Jur. 2d., Appeal and Error, § 275, p. 768.

In *Mooneyham* this court found that the voluntary seeking of probation under K. S. A. 62-2226, *et seq.,* was inconsistent with an intention to take an appeal under 62-1701, *supra,* and therefore constituted a recognition of the validity of the judgment and acquiescence therein on the part of a convicted criminal. In the absence of any legislative declaration to the contrary, in the enactment of K. S. A. 62-2226, in 1957, or subsequent to the announce-

ment of the *Mooneyham* rule by this court, it is my view the rule should be adhered to.

Since a state is not required by the Federal Constitution to provide appellate review at all (*Griffin v. Illinois,* 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A. L. R. 2d 1055, reh. den. 351 U. S. 958, 100 L. Ed. 1480, 76 S. Ct. 844) or if such is provided it may be done on such terms as a state may deem appropriate (*Mooneyham v. State of Kansas,* supra; *Griffin v. Illinois,* supra; and *McKane v. Durston,* 153 U. S. 684, 38 L. Ed. 867, 14 S. Ct. 913) I cannot find the rule to be objectionable either as a matter of principle or law. Therefore I would dismiss the appeal.

FATZER, J., joins in the foregoing dissent.