No. 44,406

THE STATE OF KANSAS, *Appellee,* v. WILLIE JONES, *Appellant.*

(422 P. 2d 888)

Opinion filed January 21, 1967.

*Jack N. Turner,* of Wichita, argued the cause and was on the briefs for appellant.

*Donald Foster,* Deputy County Attorney, of Wichita, argued the cause, and *Robert C. Londerholm,* Attorney General, of Topeka, and *Keith Sanborn,* County Attorney, of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant, Willie Jones, was convicted by a jury of the crime of burglary in the second degree as defined in K. S. A. 21-520, and has appealed from the order of the district court overruling his motion for a new trial.

The appellant is hereafter referred to as Jones or the defendant.

Following the trial and imposition of sentence, the defendant's privately retained counsel died, and he filed his notice of appeal to the Supreme Court *pro se.* Upon application of the defendant pursuant to Prefatory Rule No. 1 (*f*) of this Court (194 Kan. xii), Mr. Jack N. Turner, of the Wichita Bar, was appointed by the district court to represent the defendant in preparing and presenting this appeal. In his representation of the defendant, counsel pre-

sented this appeal with ability and diligence, and has advanced two claims of error. First, that the district court erred in admitting evidence of a confession by the defendant given to the officers of the Wichita police department in the Sedgwick County sheriff's office on the morning of July 15, 1964, to be introduced by the state, and, second, in overruling the defendant's motion for a new trial.

The essential facts disclosed by the evidence follow: During the afternoon of July 10, 1964, the defendant and his acquaintance, Charles Sneed, agreed to burglarize the Mr. Magic Car Wash, at 241 North Minneapolis, Wichita, that night, and "hit" the vending machines. Jones had examined the premises and discovered it had no burglary system. At approximately midnight, July 10, 1964, Jones picked up Sneed and his tools in the defendant's 1955 Mercury, and drove a rather indirect route to the car wash, arriving around 12:30 a. m. He parked one block west of the car wash and both Jones and Sneed got out of the car, put on their gloves, and walked across a vacant lot. They were seen by a citizen who called the police. Upon arriving at the car wash, Sneed went to the west side of the building and broke the glass in a window. Sneed crawled through the window, and Jones stood to one side. After Sneed got inside and turned back to help Jones in, Jones saw the oncoming police car and fled and hid in some weeds nearby. Sneed was arrested inside the building with his tools, and confessed to the burglary, implicating the defendant.

Jones remained hidden until after the police towed his car to the police garage and then walked to his home, more than 25 blocks away. He decided to "leave town," and walked over to Broadway, thinking he might go up the railroad tracks and catch a train, but then he decided to look for a car, and walked over to Market Street, a darker street where he thought the police would not see him quite so easily. He saw a Mercury parked outside a paint shop and broke into the shop and found its keys. Gasoline was siphoned from other cars inside the shop garage and Jones put it into the Mercury and drove it away. The following afternoon Jones left Wichita in the Mercury for Denver, Colorado. A "pick up" had been issued for his arrest and he was stopped by the highway patrol at Hays, Kansas, where he was placed in the Ellis County jail.

On July 14, 1964, Detective Thomas of the Wichita police depart-

ment, and the assistant marshal of the Court of Common Pleas of Wichita, drove to Hays to return Jones to Wichita. They arrived at Hays at 1:45 p. m., and interviewed Jones at the sheriff's office. Following a short conversation, Jones was returned to Wichita that afternoon where he was placed in the Sedgwick County jail.

The following morning, July 15, 1964, the defendant prepared in his own handwriting a statement of his participation in the burglary of the Mr. Magic Car Wash, which was introduced in evidence against him. This is the confession the defendant claims the district court erred in admitting into evidence.

The trial commenced on December 8, 1964, and lasted two days. Detective Thomas was called as a witness by the state and testified that when he interviewed the defendant in the Ellis County jail on the afternoon of July 14, 1964, he advised the defendant of his right to an attorney and that he could call an attorney at any time he so desired; that he did not have to make a statement concerning the Mr. Magic Car Wash burglary and that if he did, anything he said could be used against him in court. The defendant advised Thomas he did not wish to talk about the burglary and did not care to make any statement. No further conversation was had between the defendant and Thomas, and he was returned to Wichita.

Thomas further testified that at 9:45 a. m. on the following morning he and Detective Haag, also of the Wichita police department, interviewed the defendant in the sheriff's office at the Sedgwick County jail where Thomas advised the defendant they were there to talk to him concerning the Mr. Magic Car Wash burglary. Thomas asked the defendant if he would like to tell them what he had done in participating in the burglary and the defendant stated he would; that he knew he was in trouble and that was the reason he had "left town," and that he was on his way to Denver when he was stopped in Hays by the highway patrol. The defendant's objection to the testimony on the grounds that Thomas had not again advised Jones of his constitutional right to remain silent, of his right to confer with an attorney before making any statement, and that anything he said might be used against him in court, was overruled, the court observing that Thomas had advised the defendant of his constitutional rights the day before at Hays.

Thomas further testified to facts related to him and Detective Haag, hereinbefore set forth, concerning the defendant's participation in the car wash burglary, and then identified state's Exhibit 14

as the written statement the defendant gave to them on the morning of July 15, 1964; that the statement was in the defendant's handwriting, and that it was given to them at 10:30 a. m. when he and Detective Haag witnessed the defendant's signature. The statement was then offered in evidence, and the following occurred:

"MR. JORDAN [counsel for the defendant]: May it please the Court, we offer an objection to the introduction of this evidence by reason of threats by the department and threats of force and violence on him [defendant].

"THE COURT: You may go into that, whether he was advised of his constitutional rights and threats.

"MR. VAUGHN: All right. That has been asked and answered.

"Q. [By Mr. Vaughn] Did you in any way threaten the defendant in connection with giving of this statement or any other statement by him?

"A. No, I did not.

"Q. Did you abuse him in any way?

"A. I did not.

"Q. Did you advise him of his constitutional rights?

"A. Yes, sir, I did.

"Q. As a matter of fact, the first paragraph of this statement does that in and of itself doesn't it?

. "A. It sure does.

"THE COURT: Overruled, be admitted. The jury may view it or you may read it to them."

Thereupon, Thomas read the defendant's statement to the jury, the first part of which reads:

"My name is Willie Jones, Jr. My address is 2723 Mossman. I, Willie Jones, Jr., make this statement freely and voluntarily. I have been advised by the officers that this statement may be used against me in Court and I may call the attorney of my choice at this time. No threats nor promises have been made to me by any officers. I have read this statement and by signing it I mean to show it is true and I fully understand what it contains. . . ."

The statement then related in detail the defendant's participation in the burglary, and concluded: "I am writing and signing this statement because it is true." The statement was signed by the defendant at 10:30 a. m. on July 15, 1964, and witnessed by Detectives Thomas and Haag.

On cross-examination Thomas testified he did not believe he advised the defendant of his constitutional rights when he and Haag interviewed the defendant in the county jail at Wichita on the morning of July 15, 1964, but that he did advise him of his constitutional rights the day before when he interviewed him at Hays, and that it was his custom to advise an accused of his constitutional

rights when he first arrests him. Thomas further testified that he made no threats, promises or inducements to the defendant when he interviewed him on the morning of July 15, or in any manner lead the defendant to believe that if he prepared and signed the statement it would "go easier" with him. Thomas was excused, and the trial was recessed until the following morning.

The defendant took the witness stand and on direct examination, testified that he knew Sneed and that he went to Sneed's home around 12:00 o'clock midnight on July 10, but denied any knowledge of the break-in or that he had participated in it. With respect to his giving a statement to the officers on the morning of July 15, 1964, he testified he was not advised of his constitutional rights or that he did not have to make any statement without the advice of an attorney. The defendant testified state's Exhibit 14 was in his own handwriting, and an excerpt of his testimony follows:

"Q. Now, when you wrote that statement, did they tell you what to write?
"A. No, sir.
"Q. They did not?
"A. No, sir.
"Q. You wrote it of your own free will?
"A. Yes, sir.

As indicated, the jury returned its verdict finding the defendant guilty of burglary as charged in the information, and on December 16, 1964, his motion for a new trial was overruled. The state introduced evidence of the defendant's prior conviction of felonies in Little Rock, Arkansas, on November 30, 1957, of theft of the United States mails; in Memphis, Tennessee, on May 14, 1959, of second and third degree burglaries, and in the state of Kansas on August 26, 1959, of second degree burglary and larceny. After inquiry of the defendant if he had any legal cause why judgment and sentence should not be pronounced against him, the district court sentenced him to confinement in the Kansas State Penitentiary pursuant to K. S. A. 21-107a for a period not exceeding 30 years.

The defendant makes two points in support of his contention the district court erred in admitting the defendant's written statement into evidence. First, that the statement was obtained in violation of the Fifth Amendment to the Constitution of the United States which grants privilege against self-incrimination, relying on *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and, second, that it was the duty of the district court, before admitting the statement into evidence, to hear evidence out of the

presence of the jury and decide as a preliminary matter whether the statement was freely and voluntarily made without force or coercion, relying on *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, and *State v. McCarther,* 197 Kan. 279, 284, 416 P. 2d 290.

As construed and applied in *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed 2d 882, 86 S. Ct. 1772, the *Miranda* case, decided June 13, 1966, is inapplicable since the instant case was tried December 8-9, 1964, prior to that decision. Notwithstanding this fact, the record indicates Detective Thomas advised the defendant of his constitutional rights with respect to custodial police interrogation at Hays the day before he prepared and signed the statement admitting his participation in the burglary. Moreover, we know of no requirement that in a series of interviews between the accused and the same police detective, the accused must be reapprised of his constitutional rights every time a subsequent interview begins. However, it is unnecessary to decide the point. From a totality of events as disclosed by the record, the defendant waived his right to remain silent and to have assistance of counsel during the interrogation on the morning of July 15, 1964, when he chose to speak in the unfettered exercise of his free will by preparing and signing the statement in his own handwriting, admitting his guilt. His testimony was to the effect that when he prepared the written statement the officers did not tell him what to write and he wrote the statement admitting guilt, of his own free will. Likewise, there is nothing to indicate the interrogation conduct of the detectives encompassed a practice likely to assert pressure upon the defendant, nor did they threaten or abuse him in any way.

The defendant next contends the district court failed to follow procedural safeguards announced in *State v. Seward,* supra, and *State v. McCarther,* supra, by not hearing evidence out of the presence of the jury, and deciding as a preliminary matter whether the defendant's statement was freely and voluntarily made without force or coercion.

As indicated, counsel for the defendant objected to the introduction of state's Exhibit 14 upon the ground that it was obtained by use of threats by the police department and threats of force and violence upon the defendant, but he did not go further and request the district court to excuse the jury and hear evidence and decide that issue as a preliminary matter.

The question presented is governed by the provisions of Chapter

60, Article 4, Kansas Statutes Annotated, of our new Code of Civil Procedure which codifies the rules of evidence and provides for their application to every proceeding, both criminal and civil, conducted by or under the supervision of a court, in which evidence is produced, except to the extent to which they may be relaxed by other procedural rules or statutes applicable to this specific situation. (*State v. Wright,* 194 Kan. 271, 398 P. 2d 339; *State v. Greenwood,* 197 Kan. 676, 421 P. 2d 24; *Borggren v. Liebling,* 198 Kan. 161, 422 P. 2d 884.)

K. S. A. 60-408 deals with the preliminary inquiry by a judge, and provides, in part, that when the admissibility of evidence is subject to a condition and the fulfillment of the condition is in issue, the issue is to be determined by the judge, and with respect to the admissibility of a confession of an accused, reads:

". . . that on the admissibility of a confession of the accused in a criminal case, the judge, *if requested,* shall hear and determine the question out of. the presence and hearing of the jury . . ." (Emphasis supplied.)

The Advisory Committee Notes are to the effect that the rule simply restates the practice prevailing prior to the adoption of the section, that·in a criminal case where the admissibility of a confession is questioned, the judge, if requested, shall hear and determine the point out of the presence of the jury. (4 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, Sec. 408, pp. 202, 203; Gard's Kansas Code of Civil Procedure, Annotated, Sec. 408, pp. 372, 373.) See, also, *State v. Seward,* supra, where it was held the district court erred *in refusing the defendant's request* to hear evidence out of the presence of the jury and decide as a preliminary matter whether the confession was freely and voluntarily made without force or coercion. (*State v. Robinson,* 182 Kan. 505, 332 P. 2d 767; *State v. Curtis,* 93 Kan. 743, 145 Pac. 858; *State v. Hayes,* 106 Kan. 253, 187 Pac. 675; *State v. Latham & York,* 190 Kan. 411, 417, 435, 375 P. 2d 788, cert. den. 373 U. S. 919, 10 L. Ed. 2d 418, 83 S. Ct. 1310; *State v. Stubbs,* 186 Kan. 266, 349 P. 2d 936, cert. den. 363 U. S. 852, 4 L. Ed. 2d 1734, 80 S. Ct. 1632.)

K. S. A. 60-460 deals with hearsay evidence and subsection (*f*) states the fundamental requirements for the admission of evidence of a confession in a criminal case. The Advisory Committee Notes state that the exception to the hearsay rule is in conformity with present practice. Subsection (*f*) makes no distinction between a formal confession and an informal admission. The basic require-

ment of either is that it be the free and voluntary act of the accused, and when admitted in evidence it is the province of the jury to believe or disbelieve all or any part of the evidence of the confession, and to accept as proof of guilt, or to reject, the confession or any part of it. (*State v. Curtis*, supra, *State v. Latham & York*, supra, p. 435.)

Subsection (*f*) does not attempt to state a rule of constitutional law or to limit constitutional requirements in any way. (Gard's Kansas Code of Civil Procedure, Annotated, Sec. 460, p. 472.) However, the rule seems to be consistent with *Ashcraft v. Tennessee*, 322 U. S. 143, 88 L. Ed. 1192, 64 S. Ct. 921; *Jackson v. Denno*, 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774; *Rogers v. Richmond*, 365 U. S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735; *Haynes v. Washington*, 373 U. S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336, *Watts v. Indiana*, 338 U. S. 49, 93 L. Ed. 1801, 69 S. Ct. 1347, and *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758. Various tests used to determine voluntariness in criminal cases have been long persistent questioning (*Ashcraft v. Tennessee*, supra), relays of interrogators without rest for the accused (*Watts v. Indiana*, supra); the denial of a lawyer, relative or friends (*Escobedo v. Illinois*, supra; *Haynes v. Washington*, supra), the accused's tender or well advanced years, his lack of experience with the police, his very low mentality and lack of education (*Haley v. Ohio*, 332 U. S. 596, 92 L. Ed. 224, 68 S. Ct. 302). As the record indicates, none of those tests would render the defendant's confession and/or admission involuntary. The evidence was to the contrary.

In the absence of the defendant's specific request, and under the circumstances which attend, the district court did not err in overruling the defendant's objection to the admission in evidence of state's Exhibit 14. It was then within the province of the jury to determine the weight and credibility to be given to the evidence of the defendant's statement, the same as it was with respect to any other evidence in the case, and it was at liberty to reject any part which it did not believe or to accept any part which it believed. The foregoing conclusion is not in conflict with what was said and held in *State v. McCarther*, supra. However, we enter our caveat that the better practice would dictate the district court hear the foundation evidence out of the presence and hearing of the jury and decide the issue whether the confession and/or statement of the defendant was his free and voluntary act.

The defendant raised the same points heretofore discussed in his motion for a new trial, and in view of the foregoing, the district court did not err in overruling the motion.

A search of the entire record fails to disclose any fundamental error committed by the district court upon which a reversal could be based, and the judgment of conviction is affirmed.