No. 45,711

J OHN E DWARD B AKER, *Appellant,* v. S TATE OF K ANSAS, *Appellee.*

(464 P. 2d 212)

Opinion filed January 24, 1970.

*Donald A. Culp,* of Overland Park, argued the cause and was on the brief for the appellant.

*James A. Wheeler,* assistant county attorney, argued the cause, and *Kent Frizzell,* attorney general, *Ernest C. Ballweg,* assistant attorney general, *James W. Bouska,* county attorney, and *Bill E. Haynes,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: On February 26, 1968, the petitioner, John Edward Baker, filed a motion under K. S. A. 60-1507 attacking the judgment and sentence of the district court of Johnson county for the crime of grand larceny. The motion was denied, and Baker has appealed.

Baker was originally convicted by a jury of burglary in the second degree and grand larceny. On direct appeal to this court the burglary conviction was held to be void on the basis the information was jurisdictionally defective; the grand larceny conviction was affirmed (*State v. Baker,* 197 Kan. 660, 421 P. 2d 16).

Petitioner in his present motion asserts seven grounds: (1) lack of speedy trial; (2) the information charging grand larceny was fatally defective; (3) incompetent evidence of prior felony convictions was used to impose sentence under the habitual criminal act; (4) prejudicial and improper comments in the closing argument of the county attorney; (5) the erroneous admission of evidence resulting from an illegal search and seizure; (6) trial counsel was

incompetent and inadequate; and (7) a coerced confession was improperly used against petitioner.

Mr. Donald Culp was appointed counsel and, with petitioner present, a full evidentiary hearing was held on the 1507 motion. On October 17, 1968, the trial court made extensive findings of fact and conclusions of law, and held that petitioner had failed to sustain the burden of proof on any of the issues.

Except for the contention of lack of speedy trial, which has been abandoned, basically the same points are urged on appeal as were presented to the trial court.

Two of the points were adjudicated in Baker's direct appeal. There, we held the information was sufficient to charge the offense of grand larceny. We also determined that evidence of two prior felony convictions, the record of each disclosing on its face that defendant was represented by counsel, were sufficient to authorize imposition of the present sentence as a third conviction under the habitual criminal act. A 60-1507 proceeding ordinarily cannot be used as a substitute for a second appeal. (Rule No. 121 [c] [3], Rules of the Supreme Court, 201 Kan. xxxiii; *Basker v. State*, 202 Kan. 177, 446 P. 2d 780; *King v. State*, 200 Kan. 461, 436 P. 2d 855; *Jolly v. State*, 200 Kan. 202, 434 P. 2d 547.) Moreover, there is nothing in the additional arguments advanced with respect to these points that would cause us to deviate from what was said in the direct appeal.

We find nothing in the complaint now made regarding the assistant county attorney's closing argument which could be said to constitute a trial error of constitutional magnitude. Under Rule No. 121 (c) (3), mere trial errors not affecting constitutional rights are to be corrected on direct appeal. The point was not properly raised before and will not now be considered in this collateral proceeding.

The three remaining contentions pertain to matters involving constitutional rights. Two of these—the admission of illegally seized evidence, and a coerced confession—are alleged trial errors which were specified as error but not passed on in the direct appeal for the reason that under our then existing rule of appellate procedure, trial errors not included in the grounds of a motion for new trial, and thus not presented to the trial court, could not be reviewed.

Since our decision in the direct appeal, the rule in respect to

appellate procedure in criminal actions has been changed by the adoption of Rule No. 17, which reads as follows:

"MOTIONS FOR NEW TRIAL IN CRIMINAL PROCEEDINGS. In an appeal from the judgment of the district court in a criminal proceeding, adverse decisions or intermediate orders made in the progress of the case, including trial rulings, may be specified for review regardless of whether a motion for a new trial shall have been filed; and it shall not be necessary to specify the overruling of a motion for a new trial in order to obtain the review of any errors in such decisions, intermediate orders, or trial rulings. . . .

"Adopted by the Court June 27, 1968." (201 Kan. xxvii.)

Had Rule No. 17 been in effect when Baker's appeal was here previously, the alleged trial errors would have been reviewable.

Rule No. 121 (c) (3) provides that trial errors are to be corrected by direct appeal, but if they affect constitutional rights, they may be raised in a 60-1507 proceeding, even though the errors could have been raised on direct appeal, provided there were *exceptional circumstances* excusing the failure to appeal. The immediate question posed is whether there are exceptional circumstances excusing the failure of petitioner to properly present the alleged trial errors in his direct appeal.

This case is closely analogous to the situation presented in *Holt v. State*, 202 Kan. 759, 451 P. 2d 221. There, in a post-conviction proceeding under K. S. A. 60-1507, the petitioner sought review of a trial error involving the admissibility of his confession which had been denied him on direct appeal because he had failed to appeal from the order of the district court overruling his motion for new trial. (See, *State v. Holt*, 197 Kan. 468, 419 P. 2d 834.) The import of our decision on the direct appeal was abrogated by the subsequent promulgation of Rule No. 17. We held that such conditions constituted exceptional circumstances as contemplated by Rule No. 121 (c) (3), and the trial error which affected petitioner's constitutional rights was reviewable in the 60-1507 proceeding.

The "exceptional circumstances" requirement of Rule No. 121 (c) (3) received our careful attention in the recent case of *Barnes v. State*, 204 Kan. 344, 461 P. 2d 782, and the reader is referred to that opinion for a thorough discussion of the subject.

As a matter of fundamental fairness we believe that where, as here, a defendant on direct appeal has been precluded from a review of alleged trial errors affecting his constitutional rights because of an appellate procedural rule which has since been abrogated, exceptional circumstances exist within the purview of

Rule No. 121 (*c*) (3). Therefore, we will consider the two trial errors about which petitioner complains in this proceeding, as well as his claim of incompetent and inadequate counsel.

Baker contends that articles seized in the search of his automobile at the time of his arrest in Kansas City, Missouri, for a traffic violation were the products of an unconstitutional search and were improperly admitted into evidence. The record of trial discloses the items consisted of a suitcase containing a display card of cigarette lighters identified as having been stolen from the Ralph Rye service station. No objection was interposed to the admission of the card of lighters or the suitcase itself. Objections to other articles in the suitcase were sustained on the ground no foundation had been laid which would tie them to the particular crimes for which petitioner was being tried.

Although at the 1507 hearing the district court heard evidence on the merits of the issue and concluded there had been no illegal search and seizure, we believe petitioner was in no position to urge the point as a ground for relief.

The contemporaneous objection rule long adhered to in this state requires timely and specific objection to the admission of evidence in order for the question of admissibility to be considered on appeal. (K. S. A. 60-404.) The rule is a salutary procedural tool serving a legitimate state purpose. (See, *Mize v. State,* 199 Kan. 666, 433 P. 2d 397; *State v. Freeman,* 195 Kan. 561, 408 P. 2d 612, cert. denied, 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981.) By making use of the rule, counsel gives the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial. Furthermore, the rule is practically one of necessity if litigation is ever to be brought to an end.

In *Mize,* the trial court, as well as this court, refused to consider a constitutional claim of illegal search and seizure because of petitioner's failure to comply with the rule. We emphasized the anomaly of denying review on appeal because of the contemporaneous objection rule and then permitting review by the more circuitous route under a K. S. A. 60-1507 proceeding. We held in either case review was precluded.

While we rest our decision here, just as we did in *Mize,* on petitioner's failure to comply with the rule, the failure to object may not prevent consideration of his constitutional claim in a federal

habeas corpus proceeding, depending on whether it is shown petitioner deliberately bypassed the orderly procedure of the state courts. Mr. Mize pursued his quest for relief in the federal courts by habeas corpus. In *Mize v. Crouse,* 399 F. 2d 593 (10th Cir., 1968), the Circuit Court of Appeals, after reviewing the evidence, concluded that petitioner's failure to object to the "tainted evidence" was knowledgeably done as a part of defense strategy and, hence, consideration of his claim was precluded. The opinion was bottomed on what had been said in *Fay v. Noia,* 372 U. S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822, and *Henry v. Mississippi,* 379 U. S. 443, 13 L. Ed. 2d 408, 85 S. Ct. 564. (Also, see, *Nelson v. State of California,* 346 F. 2d 73 [9th Cir., 1965].)

In view of the federal decisions, we might add, as will later be pointed out, that in our opinion the entire record, and particularly the testimony at the 60-1507 hearing of petitioner's trial attorney, Mr. H. C. Parrish, clearly demonstrates that the contemporaneous objection rule was deliberately bypassed as a part of defense strategy, rather than because of incompetency or inadequacy of counsel, as petitioner argues.

In his claim of incompetent and inadequate counsel, petitioner contends that an examination of the trial record, as well as the evidence adduced at the 1507 hearing, shows "mere token representation and a misunderstanding about a rule of law basic to the case." We cannot agree.

Summarily, the trial judge's findings on this point were that H. C. Parrish, a duly licensed and regularly practicing attorney in Johnson county, with extensive trial practice since 1957, was appointed January 6, 1964, to represent Baker; that after a conference between Baker and Mr. Parrish, Baker waived arraignment and entered a plea of not guilty to the crimes charged in the information; that later on that day, and on subsequent days, Parrish conferred with Baker and obtained from him a detailed statement concerning not only the admissions Baker had made to the detectives but also Baker's record of arrests and convictions; that Mr. Parrish advised Baker of the charges against him and the penalty therefor, including the provisions of the habitual criminal statute; and that after first denying guilt to his counsel, Baker subsequently, of his own volition, admitted having burglarized the Ralph Rye station and taken property from it.

The court further found that at Baker's request Mr. Parrish con-

ferred several times with the assistant county attorney who agreed that if Baker would plead guilty to the charges, the state would not invoke the habitual criminal act; that being advised of the state's willingness to comply with his request, Baker, on January 15, requested Mr. Parrish to arrange for him to appear before the court for the purpose of entering a plea of guilty; that when Baker appeared on the following day, January 16, he advised Parrish and the court he had changed his mind about pleading guilty and wished to proceed with a trial.

After noting that when Mr. Parrish completed his services Baker thanked him and presented him with a :25 calibre automatic pistol, the court concluded Parrish had adequately, effectively, fairly and competently represented Baker as his court-appointed counsel.

Although not specifically mentioned in the trial court's findings, petitioner takes trial counsel to task because counsel had not been concerned with the search and seizure question and did no research in that particular area of the law. By way of explanation, Mr. Parrish stated in the 1507 hearing that, "[I]f we had proceeded with a not guilty plea and perhaps gone straight through on that, preparing for a jury trial, I might have investigated search and seizure further, but when he started giving confessions and wanting to plead guilty, we didn't pursue that particular matter any further." Counsel had four days to prepare for trial after petitioner decided not to plead guilty. In respect to trial preparation, Mr. Parrish testified he went over "everything" he had obtained in his interviews with Baker, the police officers, the assistant county attorney, and information gleaned from the latter's file. He did what research he deemed necessary; he knew this was the search of an automobile, and there was a difference between a search of a home and that of an automobile. Since he felt he understood the law of search and seizure and was relatively well-acquainted with criminal law and trial procedures generally, he did not go back and review cases on basic principles.

In addition, petitioner complains that his trial counsel was also unconcerned with proper identification, during the trial, of the property taken from petitioner's automobile. He points to the fact that Parrish did not object to hearsay testimony of a policeman, who was *not* the arresting officer, concerning evidence found in the car. In justification of his action, Mr. Parrish testified he had made so many objections during trial he was becoming fear-

ful of offending the jury and losing their "good will or support."
He also thought that "if we got the arresting officer on, we would
hurt ourselves more than if he was not there." As already indicated,
counsel did object to many items found in the suitcase which were
irrelevant to the particular crimes charged.

Under the circumstances can we say petitioner is entitled to
a new trial on the basis of inadequate and incompetent counsel
merely because his attorney failed to object to evidence now
claimed to have been obtained in an unlawful search when counsel
honestly, and in good faith, thought there was no serious question
of its admissibility? We think not. From counsel's testimony, his
action or nonaction may well be charged to trial strategy rather
than ignorance of the law. This court stated in *State v. Wright*,
203 Kan. 54, 453 P. 2d 1:

> "We doubt if one of the best lawyers ever laid claim to having tried a case
> with absolute perfection. Any good lawyer, having finished the trial of a case,
> can think of errors that he could have avoided and also think of moves that
> might have improved his client's chances. New trials cannot be granted for
> such reasons. An accused cannot be guaranteed a lawyer that will present
> a perfect trial. He can only be guaranteed a trial free of prejudicial error.
> . . ." (p. 56.)

No useful purpose would be served by our recounting the numer-
ous complaints now voiced by petitioner about his court-appointed
attorney. Appellate counsel has meticulously combed the trial
record and picked at Parrish's every move and decision and comes
up with the bald assertion of incompetent and inadequate repre-
sentation. In an abundance of caution we likewise have scruti-
nized with care the entire record, only to arrive at the same con-
clusion as the district court: that Mr. Parrish "adequately, effec-
tively, fairly and competently" represented the petitioner. The
adequacy of an attorney's services on behalf of an accused must be
gauged by the totality of his representation. (*State v. Brown*, 204
Kan. 430, 464 P. 2d 161; *Call v. State*, 195 Kan. 688, 408 P. 2d 668,
cert. denied, 384 U. S. 957, 16 L. Ed. 2d 552, 86 S. Ct. 1581.) The
representation given petitioner was far more than token representa-
tion which renders a trial a sham, the total effect of which amounts
to a complete absence of counsel. (*McGee v. Crouse*, 190 Kan. 615,
376 P. 2d 792; *Miller v. Hudspeth*, 164 Kan. 688, 192 P. 2d 147.) The
burden of establishing the incompetency of an attorney or the in-

effective assistance of counsel to the extent necessary to overcome the presumption of regularity of a conviction is upon the petitioner. (*Wisely v. State,* 201 Kan. 377, 440 P. 2d 632; *Goodwin v. State,* 195 Kan. 414, 407, P. 2d 528.) The district court properly concluded that petitioner failed to sustain that burden.

Petitioner's final point relates to testimony of his oral admissions, or confession, which was received in evidence at the trial without objection. The statements were given during custodial interrogation by police officers when petitioner was returned to Johnson county from Kansas City, Missouri. In these statements petitioner admitted breaking into the service station and stealing various items, including the display card of lighters. The statements elicited constituted a confession of guilt to the crimes with which petitioner was charged. When petitioner took the stand in his own defense he testified the officers said they would go easy on him if he would admit the burglary, that they had several other charges they could press against him, so he "just went ahead and told them whatever they wanted to know." The state introduced rebuttal testimony to the effect that no threats were made at the time of Baker's statements, and that they were freely and voluntarily given.

No request was made at trial by either party that the court hear evidence outside the presence of the jury and decide as a preliminary matter whether petitioner's confession was freely and voluntarily made. (See K. S. A. 60-408 and 60-460 [*f*].) Notwithstanding the evidence presented a fair question of the voluntariness of the confession, that issue was not determined by the court as a preliminary matter, but was left to the jury, which also had the duty to determine the weight and credibility to be given the confession.

At the 1507 hearing evidence was introduced by both sides on the issue of voluntariness of the confession. The trial court determined that petitioner's testimony of coercion was uncorroborated and failed to meet the burden-of-proof test applicable to 60-1507 proceedings. (Rule No. 121[*g*], 201 Kan. xxxiii.) Further, the court relied on *State v. Jones,* 198 Kan. 30, 422 P. 2d 888, in holding the provisions of K. S. A. 60-408 did not arbitrarily require the hearing of foundation proof out of the hearing of the jury in the absence of a request.

Subsequent to the trial court's ruling we handed down our

decision in *State v. Milow*, 199 Kan. 576, 433 P. 2d 538, which expressly overruled *State v. Jones*, supra, to the extent that a hearing outside the presence of the jury need be granted *only upon request.*

Since *State v. Seward*, 163 Kan. 136, 181 P. 2d 478, the law of this state has made it the duty of the trial court, upon request, to hear evidence and decide as a preliminary matter whether the confession was freely and voluntarily made without force or coercion. In *Milow*, the *Seward* principle as codified in K. S. A. 60-408 was thoroughly discussed by Justice Schroeder, in light of numerous federal decisions, and particularly *Jackson v. Denno*, 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205, decided June 22, 1964. We concluded that the statutory law of this state must yield when it is not in harmony with rights guaranteed by the Fourteenth Amendment to the federal constitution, as interpreted by the United States Supreme Court. Thus, foundation proof testing the admissibility of a confession must be heard outside the presence and hearing of the jury, even though no request for such hearing is made, unless, of course, there has been a knowing and intelligent waiver of that right by the accused —"an intentional relinquishment or abandonment of a known right or privilege." (See, *Fay v. Noia*, supra, and *Johnson v. Zerbst*, 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A. L. R. 357.) The rule of *Milow* is well stated in syllabus ¶ 3:

"It is the duty of a trial court, before admitting a purported confession into evidence, to conduct a proceeding separate and apart from the jury to determine from the evidence, as a preliminary matter, whether the confession was freely and voluntarily made by the accused. The range of inquiry in such collateral proceeding by the trial court is broad, and the inquiry must be based upon a consideration of the totality of the circumstances."

*Jackson v. Denno*, supra, was decided by the Federal Supreme Court five months after Baker's trial. There, just as in this case, counsel did not specifically object to the jury's determining the issue of voluntariness. Under the New York rule the trial court excluded a confession if under no circumstances could it be deemed voluntary, but left to the jury the ultimate determination of its voluntary character, as well as its truthfulness, if the evidence presented a fair question as to its voluntariness. In striking down the New York procedure, the high court observed the reliability of a confession has nothing to do with its voluntariness; the

evidence given the jury under such procedure inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness. The court went on to say that it is only a reliable determination on the voluntariness issue which satisfies the constitutional rights of a defendant and which would permit the jury to consider the confession in adjudicating guilt or innocence.

We believe what was said in *Barnes v. State,* supra, regarding the retroactive application of *Jackson v. Denno,* is controlling in this case:

"Perhaps the most persuasive authority for the proposition that *Jackson v. Denno* is to be applied to convictions already finalized, even though no specific objection was made that the judge did not rule on voluntariness prior to submitting the confession to the jury, is *Jackson v. Denno* itself. . . .

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"In view of the federal decisions we are not inclined to dispose of the *Jackson v. Denno* issue presented on any theory of waiver. . . . we hold the state has not as a matter of law met the heavy burden cast upon it to show that the appellant intentionally relinquished or abandoned a known right or privilege.

.   .   .   .   .   .   .   .   .   .   .   .   .

"At the hearing granted the appellant in his 1507 proceeding there was no testimony, nor was any offered, which comes close to meeting the requirements of waiver set forth in *Fay v. Noia,* supra, and *Johnson v. Zerbst,* supra. There has been no testimony or evidence that the specific issue concerning the lack of a *Jackson v. Denno* hearing was raised during the trial, in the motion for a new trial, or if discussed with the appellant. In other words, there is no showing that the appellant was informed of the issue—that he had been denied due process of law in the 1956 trial—and it cannot, therefore, be said he made an 'intentional relinquishment or abandonment of a known right or privilege,' (p. 464) as required by *Johnson v. Zerbst,* supra. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights." (pp. 354-7-8.)

At the time of trial here neither petitioner nor his counsel had the benefit of the *Jackson v. Denno* decision, and just as in *Barnes,* we are not inclined to dispose of a matter so fundamental as the voluntariness of a confession of guilt on any theory of waiver.

From what has been said, there are facts in substantial dispute concerning the voluntariness of petitioner's confession which have not been resolved at a *Jackson v. Denno* hearing to which petitioner is constitutionally entitled. In other words, he is entitled to an adequate evidentiary hearing productive of reliable results. We are unable to agree with the state's suggestion that the defi-

ciency has been cured by the 60-1507 evidentiary hearing, wherein the trial court found that petitioner had failed to sustain the burden of proof because his testimony of coercion was uncorroborated. Disposition of this issue cannot be upheld by application of Rule No. 121 (*g*). The trial court is required to make its determination of the issue of voluntariness in light of the rule that the burden of proof is upon the state to show that the confession was freely and voluntarily made before it is admissible in evidence. (*State v. Milow*, supra; *State v. McCarther*, 197 Kan. 279, 416 P. 2d 290.)

Accordingly, the case is remanded to the sentencing court with instructions to proceed in accordance with the decision of *State v. Milow*, supra.