No. 45,721

Robert E. Lee Barnes, *Appellant*, v. State of Kansas, *Appellee.*

(461 P. 2d 782)

Opinion filed December 6, 1969.

*Gerald W. Scott*, of Wichita, argued the cause, and *Don Matlack*, also of Wichita, was with him on the brief for the appellant.

*Richard K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a proceeding instituted pursuant to K. S. A. 60-1507 to vacate a judgment and sentence to life imprisonment upon the defendant's conviction of murder in the first degree in the year 1956. Appeal has been duly perfected from the refusal of the trial court to grant relief.

The underlying questions are whether a confession made by the appellant while in custody and prior to trial was properly admitted

into evidence before the jury in the trial of the criminal action, and whether the error, if any, was waived by the appellant's failure to take an appeal from the conviction.

On the 3rd day of April, 1956, a complaint was filed in the district court of Sedgwick County, Kansas, by Detective Floyd Hannon of the Wichita police department. The complaint charged Robert E. Lee Barnes and his wife with first degree murder. Pursuant to a warrant Detective Hannon was dispatched to Miami, Florida, where Barnes and his wife were in custody. As a result of conversations between Barnes and Hannon at the Miami, Florida, police station, Barnes gave both an oral and a written confession which is the subject of this litigation. As a result of the statements made by Barnes in Florida the charges against Barnes' wife were dropped and only Barnes was returned to the state of Kansas.

Barnes contends by reason of threats designed to implicate his wife, and the statement of Hannon that their child would be placed in the custody of juvenile authorities, his confession was involuntarily made.

At the trial of the criminal action the voluntariness of Barnes' confession was determined by the trial court in a collateral proceeding, but the trial court admitted only the testimony of Detective Hannon, holding that all the state was required to do was make a *prima facie* showing that the confession was voluntarily made. The trial court refused to hear the testimony of Barnes in the collateral proceeding conducted in the absence of the jury. The trial court held if Barnes desired to present testimony challenging the voluntary character of his confession it was defensive matter for the jury to hear. It also ruled that if Barnes took the stand to testify he would be subject to cross examination on all matters in connection with the offense charged.

This was the situation presented in *State v. Milow*, 199 Kan. 576, 433 P. 2d 538, where this court held such procedure violated the requirements of *Jackson v. Denno*, 378 U. S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A. L. R. 3d 1205. There the Supreme Court of the United States held a collateral proceeding to determine the voluntariness of a confession, where the inquiry was not based upon a consideration of the totality of the circumstances, violated the due process clause of the Fourteenth Amendment to the Federal Constitution.

In the 1507 proceeding presently before this court on appeal the

trial court granted the appellant an evidentiary hearing at which he was present and testified. His court-appointed counsel also testified. The hearing was conducted on the 13th day of January, 1968, and the appellant was assisted by court-appointed counsel. As a result of such evidentiary hearing the trial court found "A proper hearing was not held" at the trial of the criminal action to determine the voluntariness of the appellant's confession, as required by *Jackson v. Denno,* supra, and it ordered that such hearing be granted. On the date set for such hearing, January 19, 1968, the trial court reconsidered its ruling and reversed its position, holding the appellant had waived the constitutional issue by failing to take an appeal from the conviction. The trial court said:

". . . In view of my finding that it was the movant's decision to let the judgment and verdict stand as it was, I certainly can't find that there were any exceptional or that there are any exceptional circumstances excusing the failure to appeal. Based upon Rule 121 ( c ) and the cases cited by the state this morning, if there is not an exceptional circumstance excusing failure to take an appeal, then even constitutional issues have been waived."

At the evidentiary hearing in the 1507 proceeding both the appellant's two court-appointed counsel and the appellant testified as to discussions concerning an appeal from the murder conviction. As a result of the evidence presented the trial court found the appellant's final determination not to appeal was based upon the law involved and the evidence presented at the time of the trial in the criminal action, and his decision was not based upon lack of funds.

The record discloses letters were written by counsel appointed for the appellant in the criminal proceeding for the purpose of obtaining money to file an appeal, but his 1956 counsel testified at the hearing in the 1507 proceeding the appellant was unable to obtain any money. These letters were proffered at the motion for rehearing of the 1507 proceeding but were not admitted.

The record further discloses that early in 1960 the appellant wrote a letter to his court-appointed attorney in the 1956 trial who responded as follows:

". . . You will recall that no appeal was ever taken, largely because I defended you on an appointment basis for a total fee of $140.00, and at that time there was no provision for an appointment counsel for appeals. As a consequence so far as I know, no transcript of the case was ever prepared."

On appeal the appellant contends his right to due process of law as provided by the Fourteenth Amendment to the Federal Constitution was violated during the trial in 1956. This point is well taken

in the light of *Jackson v. Denno,* supra, *State v. Milow,* supra, and subsequent federal decisions. Under *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, and *State v. Hayes,* 106 Kan. 253, 187 Pac. 675, as construed in *State v. Milow,* supra, it was trial error under existing Kansas law to admit the appellant's confession upon the limited evidence presented in the collateral proceeding.

Viewed as of the time the appellant's 1507 hearing was conducted before the trial court in 1968, the limited collateral proceeding conducted by the trial court at the appellant's murder trial in 1956 to determine the voluntariness of the appellant's confession also violated the appellant's constitutional right because *Jackson v. Denno,* supra, has been given retroactive application. The *Jackson* decision was held applicable to another case involving a federal habeas corpus proceeding which was pending at the time it was rendered. (*McNerlin v. Denno, Warden,* 378 U. S. 575, 12 L. Ed. 2d 1041, 84 S. Ct. 1933.)

In *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, the Supreme Court said:

". . . Similarly, *Jackson v. Denno,* 378 U. S. 368 (1964), which involved the right of an accused to effective exclusion of an involuntary confession from trial, was itself a collateral attack. In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' *Linkletter v. Walker,* 381 U. S., at 639; *Tehan v. Shott,* 382 U. S., at 416." (pp. 727, 728.)

Further in the opinion the court stated:

"Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree. We gave retroactive effect to *Jackson v. Denno,* supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature. . . ." (pp. 728, 729.)

The appellant also contends his right to the effective assistance of counsel and equal protection under the due process clause of the Fourteenth Amendment to the Federal Constitution was denied and thereby deprived him of a constitutional right in 1956, because the Kansas law at that time did not authorize the appointment of counsel to assist him in the perfection of an appeal from his conviction and sentence.

This point is well taken.

In 1956 G. S. 1949, 62-1701 provided that an appeal to the Su-

preme Court of the state of Kansas may be taken by a defendant as a matter of right from any judgment against him, but no statute or rule of the Supreme Court of the state of Kansas required the appointment of counsel on appeal, except in a case where an indigent defendant had been found guilty of murder in the first degree and his punishment fixed at death. (*Smith v. Crouse*, 192 Kan. 171, 176, 386 P. 2d 295.) After the appellant's conviction of murder in the first degree he filed no notice of appeal and made no request for the appointment of counsel to assist him in an appeal. The latter, of course, would have been futile. His then court-appointed counsel filed a motion for a new trial raising as one of the trial errors the admission of the appellant's confession in evidence at his trial in 1956.

At the hearing in the 1507 proceeding the appellant's court-appointed counsel in 1956 testified they did not think the collateral hearing on voluntariness of the confession was sufficient to comply with Kansas law and *might* have constituted error.

Since the appellant's conviction in 1956 the Supreme Court of the United States in *Douglas v. California*, 372 U. S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814, rehearing denied 373 U. S. 905, 10 L. Ed. 2d 200, 83 S. Ct. 1288, ruled that it was a denial of the equality demanded by the Fourteenth Amendment to deny an indigent defendant the right to counsel to assist in the perfection of his appeal from an adverse judgment. The court there stated:

". . . There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." (pp. 357, 358.)

The United States Court of Appeals elaborated on *Douglas v. California*, supra, in *Chase v. Page*, 343 F. 2d 167 (10th Cir. 1965), where it said:

"We know that the State of Oklahoma may, consistently with Fourteenth Amendment due process, fail to provide for appeal in criminal cases, or it may provide for an appeal upon such terms as it deems appropriate. [Citations omitted.] But, once an appeal as of right is recognized, it must be afforded to the rich and the poor alike. To that end an indigent person is constitutionally entitled to the assistance of counsel to insure the equal exercise of the right. Specifically, the convicted person is entitled to advice of counsel on the issue

of his financial ability to provide an adequate record to enable the appellate court to determine the merits of his appeal as if he were a non-indigent person. See Douglas v. People of the State of California, 372 U. S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811, rehearing denied 373 U. S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200; Lane v. Brown, 372 U. S. 477, 83 S. Ct. 768, 9 L. Ed. 2d 892; Draper v. State of Washington, 372 U. S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899." (p. 170.)

The court there further said in speaking of the federal law:

". . . This court has recently held that the time for filing an appeal under Rule 37 (*a*) (2) of the Federal Rules of Criminal Procedure does not commence to run until a federally convicted defendant has been advised of his right to appeal and effective assistance of counsel afforded. And, a convicted, confined person who has not been afforded the assistance of counsel concerning his right of appeal and the exercise thereof may collaterally attack his judgment of sentence. . . ." (pp. 170, 171.)

In accordance with the import of the *Douglas* decision, the Supreme Court of Kansas adopted Rule No. 56 on April 16, 1963, (now appearing in Prefatory Rule No. 1 [*f*], 201 Kan. xv), which reads:

" 'When any defendant has been convicted of a felony and he is without means to employ counsel to perfect an appeal to the supreme court, he may make affidavit to that effect, stating that he intends to appeal and requesting the appointment of counsel. The judge of the court in which such defendant was convicted shall, when satisfied that the affidavit is true, appoint competent counsel to conduct such appeal.' "

The effect of the *Douglas* decision was discussed in *Porter v. State,* 196 Kan. 732, 414 P. 2d 56. There it was held "the failure to prosecute a *pro se* appeal, . . . due to the lack of advice or assistance of counsel *at any time concerning the appeal,* constitutes a denial of due process." (p. 734.) (Emphasis added.)

Furthermore, *Douglas v. California,* supra, has been given retroactive application. The Kansas Supreme Court in *Smith v. Crouse,* supra, ruled that *Douglas v. California,* supra, was not entitled to be applied retroactively, but was promptly reversed in *Smith v. Crouse, Warden,* 378 U. S. 584, 12 L. Ed. 2d 1039, 84 S. Ct. 1929, in a per curiam opinion. The retrospective application of *Douglas v. California,* supra, is also affirmed by *Daegele v. Kansas,* 375 U. S. 1, 11 L. Ed. 2d 44, 84 S. Ct. 89, which reversed the Kansas Supreme Court without an opinion, citing the *Douglas* case. For other federal decisions touching upon the point, see *Spaulding v. Taylor,* 234 F. Supp. 747 (D. Kan. 1964); and *Donnell v. Swenson,* 258 F. Supp. 317 (W. D. Mo. 1966).

It follows any attempt the appellant might have made for the assistance of counsel to perfect an appeal from his murder convic-

tion in 1956 would have been futile. It cannot be said he had the effective benefit of counsel after his trial and conviction. The trial court found the appellant's constitutional right to have counsel appointed to assist him in an appeal was immaterial because the appellant had decided to let the judgment and verdict stand without taking an appeal.

Did the appellant waive any reviewable error by failing to perfect an appeal to the Kansas Supreme Court within the statutory period after the 1956 judgment of conviction and sentence?

When the remedy afforded a prisoner in custody under sentence of a court of general jurisdiction, claiming the right to be released, may be invoked under K. S. A. 60-1507 is set forth in Supreme Court Rule No. 121 (*c*) (201 Kan. xxxiii). Insofar as this proceeding is concerned Rule No. 121 (*c*) (3) is pertinent. It provides:

". . . (3) a proceeding under section 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, *provided there were exceptional circumstances excusing the failure to appeal.*" (Emphasis added.)

The appellant argues the provisions of K. S. A. 60-1507 are relatively new to Kansas law, having been enacted as a part of the Laws of 1963, ch. 303, which became effective January 1, 1964. To implement the proceedings under 60-1507 the Supreme Court on the 16th day of October, 1964, promulgated Rule No. 121 (201 Kan. xxxii). The appellant argues there was no restriction on the filing of a motion for relief under the statute as is presently made by Rule No. 121 (*c*) (3), and he contends the limitations imposed by the rule cannot be applied retroactively to prohibit rights existing under the statute prior to October 16, 1964. (Citing *McQueeney v. State,* 198 Kan. 642, 426 P. 2d 114.)

A similar contention was made in *King v. State,* 195 Kan. 736, 408 P. 2d 599. There the appellant contended Rule No. 121 (*c*) (2) should not have been applied to him because it was adopted after his action was filed. There the court said:

". . . We find no merit in this claim, for we believe the rule is but declarative of the law which long has been applicable to actions of this character.

"In our judgment, it was the intention of the legislature when it enacted K. S. A. 60-1507 that proceedings brought thereunder should be coextensive with habeas corpus proceedings. . . ." (p. 738.)

The court then points out the law in habeas corpus was in accord with the rule. The scope of collateral attack under habeas corpus prior to the enactment of Rule No. 121 was the same as the rule. (*Strong v. Edmondson,* 177 Kan. 247, 277 P. 2d 585; and *Lee v. Hoffman,* 179 Kan. 303, 293 P. 2d 1010.) The exception to the rule noted by the court in *Perrin v. State,* 196 Kan. 228, 410 P. 2d 298, and in *McQueeney v. State,* supra, was based on a portion of the rule which was not declaratory of the law in existence. Prior to the rule there was no form in habeas corpus proceedings prescribed by law requiring the petitioner to list all of his grounds for relief. Here the scope of the petitioner's remedy was not changed by Rule No. 121.

The errors with which we are concerned in the instant case affect the appellant's constitutional rights, and the immediate question posed is whether there are exceptional circumstances excusing the appellant's failure to appeal.

The appellant analyzes the cases in which Rule No. 121 (*c*) (3), formerly No. 121 (*c*) (4), has been cited, and concludes that no definition or standard has been set forth concerning "exceptional circumstances."

Without burdening our opinion by a review of these cases, it may be conceded our decisions under this rule have heretofore established no definite guidelines to follow. This has been occasioned by several factors. The statutory provisions of K. S. A. 60-1507 are relatively new; recent decisions of the United States Supreme Court regarding indigent persons accused of crime have changed existing law; and the United States Supreme Court has enlarged the federal constitutional rights of persons accused of crime by construction of the United States Constitution. These changes have resulted in the presentation of unique questions in criminal appeals and in appeals from proceedings instituted pursuant to 60-1507, *supra.* To avoid proliferating litigation and give meaningful review in such cases, this court has attempted to consider points raised by persons accused of crime at the first opportunity, where it appears they are entitled to a review. Accordingly, the "exceptional circumstances" affording review in a 1507 proceeding, where the errors have not been raised on appeal, have in the past been rather loosely construed. (For the most recent cases, see *Holt v. State,* 202 Kan. 759, 451 P. 2d 221; *Bush v. State,* 203 Kan. 494, 454 P. 2d 429; and *Peterson v. State,* 203 Kan. 959, 457 P. 2d 6.)

On this point what the Supreme Court of Pennsylvania has said in *Com. ex rel. Harbold, Appellant v. Myers,* 417 Pa. 358, 207 Atl. 2d 805, is expressive of the action heretofore taken in Kansas. The court there said:

". . . This Court has exercised particular vigilance to see that, on both direct and collateral review, claims of federal, as well as state, constitutional rights are comprehensively and justly entertained and decided by our state courts. Federal rights concern us as much as any other rights which we are charged to enforce. This practice has frequently been maintained even where established post-trial procedures may have been negligently or inadvertently ignored. Indeed, the practice has been followed even where there has been some possibility of a conscious choice to forgo the usual direct review provided, but where the record nevertheless does not clearly support a finding of intelligent, understanding waiver of orderly review procedures. . . ." (p. 366.)

As the criminal law becomes more settled, guidelines will gradually emerge.

This court in *State v. Richardson,* 194 Kan. 471, 399 P. 2d 799, recognized that 60-1507, *supra,* was new to Kansas law and followed the language of a federal statute. (28 U. S. C. § 2255, originally enacted in 1948.) The court then said, "It may therefore be said the body of federal law which has developed under § 2255, *supra,* should be given great weight in construing the provisions of 60-1507, *supra,* in the Kansas law." (p. 472.)

Looking then to the federal law to see whether the appellant's failure to appeal his 1956 conviction constituted a waiver of his constitutional rights which had been denied him, as heretofore indicated, we find some landmark cases in point.

In *Johnson v. Zerbst,* 304 U. S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, the court was confronted with the question as to whether a petitioner had waived his constitutional right. In the opinion the court summarized the federal law to be: (1) That courts will indulge every reasonable presumption against a waiver of fundamental rights, and do not presume acquiescence in their loss; (2) that a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege; (3) that the determination of whether there has been an intelligent waiver must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused; and (4) that federal habeas corpus is available to a defendant who, without having effectively waived his constitutional rights, has been convicted and sentenced, and to whom expiration

of time has rendered relief by an application for a new trial or by an appeal unavailable.

The Supreme Court of the United States in *Fay v. Noia*, 372 U. S. 391, 9 L. Ed. 2d 837, 83 S. Ct. 822, after an exhaustive discussion of the question of waiver and the citation of many prior decisions of that court, held that a defendant who had been convicted by the use of a coerced confession in a state court could obtain relief in a federal habeas corpus proceeding, notwithstanding the fact of a procedural defect in the state courts which barred any challenge to the conviction in state courts. In the opinion the court said:

". . . We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U. S. 458, 464—'an intentional relinquishment or abandonment of a known right of privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. *Cf. Price v. Johnston*, 334 U. S. 266, 291. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. *Cf. Carnley v. Cochran*, 369 U. S. 506, 513-517; *Moore v. Michigan*, 355 U. S. 155, 162-165. A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. *E. g., Rice v. Olson*, 324 U. S. 786.

". . . Our decision today swings open no prison gates. Today as always few indeed is the number of state prisoners who eventually win their freedom by means of federal habeas corpus. Those few who are ultimately successful are persons whom society has grievously wronged and for whom belated liberation is little enough compensation. Surely no fair-minded person will contend that those who have been deprived of their liberty without due process of law ought nevertheless to languish in prison. . . ." (pp. 438-441.)

The state relies upon *Thornton v. United States,* 368 F. 2d 822 (D. C. Cir. 1966), and quotes at length from the language in the opinion. In a five to three decision in *Kaufman v. United States,* 394 U. S. 217, 22 L. Ed. 2d 227, 89 S. Ct. 1068, the United States Supreme Court rejected the rule announced in the majority opinion in *Thornton* and adopted the reasoning of the dissent. In *Kaufman* the court held: (1) That a federal prisoner's claim that he was convicted on evidence obtained in an unconstitutional search and seizure was cognizable in a postconviction proceeding under 28 U. S. C. § 2255, it not being necessary that there be a showing of special circumstances; and (2) that *failure to appeal* from a conviction did not deprive a federal postconviction court of power to adjudicate the merits of constitutional claims.

It is the state's contention that Kansas follows the *Thornton* rule— that there must be exceptional circumstances excusing the failure to appeal, to authorize collateral attack upon a judgment, even as to errors affecting constitutional rights.

The effect of a change in constitutional law or a change in the interpretation of constitutional law on waiver has been considered in a number of cases.

After the exclusionary rules announced in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684 (1961), applied retroactively to cases that had not become final at the time of the decision, courts have held that failure to object to the introduction of illegally obtained evidence did not constitute a waiver of the accused's right. (See *United States v. Maroney,* 339 F. 2d 710 [3rd Cir. 1965]; and *Dillon v. Peters,* 341 F. 2d 337 [10th Cir. 1965].) The decided cases apply the same principle of nonwaiver to constitutional changes of law or interpretation brought about by the *Jackson v. Denno* decision which is retroactively applied.

Perhaps the most persuasive authority for the proposition that *Jackson v. Denno* is to be applied to convictions already finalized, even though no specific objection was made that the judge did not rule on voluntariness prior to submitting the confession to the jury, is *Jackson v. Denno* itself. Jackson was convicted in 1960 or 1961. Although an objection was made as to the confession of Jackson, the objection was on the ground that the confession was involuntary, not the jury determination of voluntariness on which *Jackson* was ultimately decided. An appeal was taken, but this point was not raised until later during federal habeas corpus proceedings. In fact,

the dissenting opinions commented on the failure to raise the question at trial and on appeal and on the fact that the question was not properly before the court or properly briefed. Before the *Jackson v. Denno* decision was a day old, it was relied upon to reverse eleven cases in which the *Jackson v. Denno* principle was not the principal point, if raised at all. (See *Jackson v. Denno*, supra, footnote 9, p. 406.) Justice Black, with whom Justice Clark joined, dissenting in part and concurring in part, stated:

". . . Certainly if having the voluntariness of their confessions passed on only by a jury is a violation of the Fourteenth Amendment, as the Court says it is, then not only Jackson but all other state and federal prisoners already convicted under this procedure are, under our holding in *Fay v. Noia*, 372 U. S. 391, entitled to release unless the States and Federal Government are still willing and able to prosecute and convict them. *Cf. Doughty v. Maxwell*, 376 U. S. 202; *Pickelsimer v. Wainwright*, 375 U. S. 2. . . ." (p. 406.)

Without further burdening this opinion with federal decisions, counsel for the appellant in a commendable brief cite numerous federal decisions in which relief was granted on writs of habeas corpus from pre *Jackson v. Denno* trials, and also in which relief was granted on appeals from pre *Jackson v. Denno* trials. The brief may be found on file in the state library for those interested.

In connection with this point two cases deserve mention. In *Proctor v. Anderson*, 361 F. 2d 557 (D. C. Cir. 1966), the matter came before the court on a writ of habeas corpus raising the *Jackson* issue. The petitioner had been tried and sentenced in 1963 and appealed raising the contention that a statement had been taken in violation of *Mallory v. United States*, 354 U. S. 449, 454, 1 L. Ed. 2d 1479, 77 S. Ct. 1356. Although *Jackson v. Denno*, supra, had been decided before the appeal was completed, it was not considered because the petitioner at no stage of the proceedings sought a hearing and determination on the issue of voluntariness of his confession. Two weeks after that decision the petitioner filed a petition for rehearing *en banc*. There was no suggestion whatever of a claimed *Jackson v. Denno* issue. The petition for rehearing *en banc* was denied and the petitioner sought certiorari. One month before the Supreme Court denied certiorari, the petitioner raised the *Jackson v. Denno* issue by filing a supplemental petition for rehearing *en banc*. In it he claimed, for the first time, that the district court had erred in submitting to the jury the issue of voluntariness of his confession. The supplemental petition was denied in

*Proctor v. United States,* 343 F. 2d 317 (D. C. Cir. 1955), and *no appeal* was taken from that order of denial. In the dissenting opinion Judge Bazelon stated:

". . . This claim, it is further alleged was not argued on appeal because it was not supported by then-existing law, and was not argued in the earlier petition for rehearing *en banc* because counsel was not then aware of the Supreme Court decisions in *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 1028 (1964); and *Muschette v. United States,* 378 U. S. 569, 84 S. Ct. 1927, 12 L. Ed. 2d 1039 (1964). Petitioner's claim appears to have substantial merit. . . ." (p. 317.)

One month later in *Proctor v. Anderson,* supra, the petitioner filed a petition for a writ of habeas corpus again raising the *Jackson v. Denno* issue. That petition was treated as a motion for relief under § 2255, and the United States Court of Appeals for the District of Columbia Circuit held that relief should be granted. In the opinion it was stated:

"It appearing that the trial judge referred the question of voluntariness of the confession to the jury without first making that determination himself.

"It is ordered that this case be, and it is hereby, remanded to the District Court for hearing on voluntariness of the confession admitted in evidence. *Jackson v. Denno,* . . ." (p. 558.)

A case decided by the Supreme Court of Michigan bearing on the point presently before this court is *People v. Ubbes,* 374 Mich. 571, 132 N. W. 2d 669. The appellant had no appeal from his conviction as a matter of right because the trial took place in 1961. The court granted leave to appeal upon application, but limited the appeal to three questions raised in the application: (1) Was defendant's confession obtained while defendant was held in custody without being taken before a magistrate admissible? (2) was defendant's confession involuntary as a matter of fact? and (3) was there an illegal search and seizure? The court stated:

"Diligent defense counsel, both after the preliminary examination and in advance of trial, by proper motion, raised all the obvious constitutional issues: illegal search and seizure, illegal arrest, and illegal confinement, and by motion sought to suppress the admission of the arc welder and defendant's alleged confession." (p. 575.)

Further in the opinion it was said:

*"While we granted a limited review of this case on application for leave to appeal, the advent of the decision of the United States Supreme Court in Jackson v. Denno, . . . mandates our expansion of the scope of review.* Under the rule we adopted after *Jackson, supra,* (see our decision on rehearing in *People v. Walker,* 374 Mich. 331), we perforce must remand here, at least for

a separate determination of the issue of voluntariness. . . ." (pp. 575, 576.) (Emphasis added.)

A good discussion on the waiver of the *Jackson v. Denno* issue may be found in *United States v. Brierly,* 269 F. Supp. 753 (E. D. Pa. 1967).

In view of the federal decisions we are not inclined to dispose of the *Jackson v. Denno* issue presented on any theory of waiver. In spite of the trial court's finding, we hold the state has not as a matter of law met the heavy burden cast upon it to show that the appellant intentionally relinquished or abandoned a known right or privilege.

In 1956 at the time of the appellant's trial, *Stein v. New York,* 346 U. S. 156, 97 L. Ed. 1522, 73 S. Ct. 1077, was the law of the land. Among other things it held due process was not violated by state law under which the question of voluntariness of an accused's confession is left to a jury for ultimate determination by a general verdict, even though a general verdict of guilty afforded no basis to determine whether the confession issue was decided in the accused's favor. In 1956 Kansas law was governed by the evidentiary rule set forth in *State v. Seward,* supra, which is said to support the "Wigmore" or "Orthodox" rule whereby the judge makes a ruling on voluntariness prior to admission into evidence, and the jury considers voluntariness as it affects credibility or weight to be given to the confession. However, the opinion in *State v. Seward,* supra, does not go into the degree or manner in which evidence is to be received in the collateral proceeding, and it cannot be said with certainty the ruling on voluntariness made by the trial judge in the trial of the appellant in 1956 would have been stricken down as an inadequate hearing prior to the *Jackson v. Denno* decision. The trial judge in the appellant's 1956 trial did hold a collateral hearing out of the presence of the jury and made a finding of voluntariness. (This is argued by the state to uphold the trial court's decision.) A collateral hearing almost identical to that given the appellant in 1956 was first stricken down by the Kansas Supreme Court in *State v. Milow,* supra, in 1967. In *Milow* the state in its brief argued and contended that such hearing met the necessary requirements of *Jackson v. Denno* on voluntariness. In *Milow* this court specifically ruled for the first time that the trial court must hear more than the state's evidence in determining voluntariness.

At the hearing granted the appellant in his 1507 proceeding there was no testimony, nor was any offered, which comes close to meeting

the requirements of waiver set forth in *Fay v. Noia,* supra, and *Johnson v. Zerbst,* supra. There has been no testimony or evidence that the specific issue concerning the lack of a *Jackson v. Denno* hearing was raised during the trial, in the motion for a new trial, or if discussed with the appellant. In other words, there is no showing that the appellant was informed of the issue—that he had been denied due process of law in the 1956 trial—and it cannot, therefore, be said he made an "intentional relinquishment or abandonment of a known right or privilege," (p. 464) as required by *Johnson v. Zerbst,* supra. Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.

It cannot be overlooked that at the time of the appellant's trial in 1956 the state of Kansas had no procedures or laws in existence by which the appellant, an indigent, could have had the assistance of counsel on appeal, or a copy of the transcript of the trial.

Another facet of this case parallels *Fay v. Noia,* supra. On November 14, 1956, the appellant was tried for first degree murder in Wichita, Kansas. Following the trial and before argument on the motion for a new trial, the rumor spread that eleven members of the jury voted for the death penalty on the first ballot; ten on the second ballot; and on the third ballot all jurors voted in favor of the life sentence. This was confirmed by notes made on the jury sheet of the appellant's trial counsel. In the November 28, 1956, issue of the Wichita Beacon newspaper, an article appeared which stated:

"An all male jury found Barnes guilty of first degree murder November 20 after deliberating but four hours.

"The hangman's noose hung over Barnes with eleven men on the twelve man jury voting in favor of the death penalty for the first half hour.

"The second ballot showed ten men in favor of the death penalty."

This must have been known to the appellant although the record does not disclose that he did. The record does not disclose the reasons for the appellant's failure to take an appeal.

The existence of exceptional circumstances in such a situation is illustrated in *Fay v. Noia,* supra, where the defendant had intentionally chosen not to appeal, but the waiver was held not to be binding on him. In the opinion the court there said:

"The application of the standard we have adumbrated to the facts of the instant case is not difficult. Under no reasonable view can the State's version of Noia's reason for not appealing support an inference of deliberate bypassing of the state court system. For Noia to have appealed in 1942 would

have been to run a substantial risk of electrocution. His was the grisly choice whether to sit content with life imprisonment or to travel the uncertain avenue of appeal which, if successful, might well have led to a retrial and death sentence. See, *e. g., Palko v. Connecticut,* 302 U. S. 319. He declined to play Russian roulette in this fashion. This was a choice by Noia not to appeal, but under the circumstances it cannot realistically be deemed a merely tactical or strategic litigation step, or in any way a deliberate circumvention of state procedures. This is not to say that in every case where a heavier penalty, even the death penalty, is a risk incurred by taking an appeal or otherwise foregoing a procedural right, waiver as we have defined it cannot be found. Each case must stand on its facts. In the instant case, the language of the judge in sentencing Noia, see note 3, *supra,* made the risk that Noia, if reconvicted, would be sentenced to death, palpable and indeed unusually acute." (pp. 439, 440.)

Noia had stated that while he was aware of his right to appeal, he did not appeal because he did not wish to saddle his family with an additional financial burden and he had no funds of his own. The gist of his lawyer's testimony was that Noia was also motivated not to appeal by fear that if successful he might get the death sentence if convicted on a retrial. The trial judge, not bound to accept the jury's recommendation of a life sentence, had said when sentencing him, " 'I have thought seriously about rejecting the recommendation of the jury in your case, Noia, because I feel that if the jury knew who you were and what you were and your background as a robber, they would not have made a recommendation. But you have got a good lawyer, that is my wife. The last thing she told me this morning is to give you a chance.' " (*Fay v. Noia,* supra, footnote 3, p. 397.)

If the belief that the jury almost hanged the appellant entered into a decision not to appeal, exceptional circumstances exist under the doctrine of *Fay v. Noia,* supra, and waiver cannot be found. But the appellant's choice was more tragic than Noia's, because the record discloses, according to members of the jury who were recently found and questioned, the rumor was totally untrue.

While the question of the voluntariness of the appellant's confession has not reliably been determined, the point is inextricably interwoven with the question of waiver. For if any part of the appellant's determination not to appeal was based upon the fear that his wife, though not involved, would be drawn into the second trial as a co-defendant—a circumstance which the appellant contends so completely destroyed his ability to maintain his constitutional right against self-incrimination, when presented with the proposition

by Detective Hannon that if the appellant did not confess his wife would be retained in custody on the first degree murder warrant— a voluntary waiver by the appellant of his right to a review of constitutional errors must be ruled out in this postconviction proceeding.

Under all of the facts and circumstances presented by the record in the instant case *exceptional circumstances* are shown to exist which meet the requirement of Rule No. 121 (*c*) (3), and upon review of the constitutional issues presented in this proceeding we hold the appellant is entitled to relief.

We now turn to a consideration of the disposition of this case.

The provisions of K. S. A. 60-1507 specifically authorize the appellate court to grant the appellant a new trial, upon finding that the judgment in a criminal case is open to collateral attack or that there has been a denial or infringement of constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. The disposition of the case, therefore, in accordance with the opinion and directions in *State v. Milow*, supra, is indicated. At this point the appellant has not yet had an adequate evidentiary hearing productive of reliable results, to which he is constitutionally entitled, concerning the voluntariness of his confession.

Accordingly, the case is remanded to the sentencing court with directions to proceed in accordance with the decision in *State v. Milow*, supra.