No. 103,245

STATE OF KANSAS, *Appellee*, v. SHANNON E. BOGGUESS, *Appellant*.

(268 P.3d 481)

Opinion filed January 20, 2012.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Shannon E. Bogguess requested a bench trial on stipulated facts after his motion to suppress his confession was denied. He was convicted of first-degree murder, aggravated robbery, aggravated kidnapping, aggravated assault, and criminal possession of a firearm. We must first decide whether Bogguess reserved his appellate rights in the stipulation. Because we hold that Bogguess reserved his right to appeal, we must decide whether the district court correctly limited Bogguess' testimony at the hearing under *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), and whether the district court erred in denying Bogguess' motion to suppress. Finally, we will briefly address Bogguess' remaining issues on appeal.

## FACTUAL BACKGROUND

According to the stipulated facts, on May 12, 2008, Bogguess and Kedrin D. Littlejohn went to James Collins' place of business with a handgun, intending to take money from Collins by force. Bogguess and Littlejohn confronted Collins inside the business. When Collins resisted, Bogguess shot him in the leg. Bogguess and Littlejohn put Collins in one of the Hummer motor vehicles from the business in an attempt to take him to an ATM, where they intended to force him to withdraw cash for them. At some point during the drive, Collins jumped from the moving Hummer into the street. When Bogguess and Littlejohn were unable to force Collins back into the vehicle, Bogguess shot Collins in the neck/shoulder area.

Jeremy Linot saw the confrontation in the street and ran to help Collins get out of the road. Linot was forced to retreat from his attempt to assist Collins when the Hummer turned around and drove back down the street toward him. Linot testified at the preliminary hearing that he feared that he and Collins were going to

be run over or shot. Collins was struck by the Hummer and pronounced dead at the scene.

Linot and other witnesses described Bogguess and Littlejohn as "a Hispanic male or a light-skinned black male" and "a black male." Video surveillance from a restaurant showed the pair running through a parking lot. Bogguess and Littlejohn gave statements to the police varying only in Bogguess' intention in shooting Collins the second time and who had control of the vehicle when Collins was run over. When Bogguess was located by Wichita police officers, he had numerous credit cards and other identification belonging to Collins. He also had property purchased that day using Collins' credit cards.

Other than the stipulated facts, no evidence was presented at the bench trial. The trial court found Bogguess guilty on all counts. Bogguess was sentenced to life without the possibility of parole for 25 years on the murder conviction, plus a consecutive 631 months' imprisonment on the remaining convictions. He timely appeals. Further facts will be presented as necessary for the analysis.

## RESERVATION OF APPELLATE RIGHTS

By entering into a stipulation of facts, the defendant is precluded from disputing the factual evidence contained in the stipulation. *State v. Downey*, 27 Kan. App. 2d 350, 359, 2 P.3d 191, *rev. denied* 269 Kan. 936 (2000).

Although the case was scheduled for a jury trial, Bogguess elected to proceed with a bench trial on the stipulated facts. Bogguess' counsel stated, "Your Honor, Mr. Bogguess does not wish to put the family through a trial, and he wishes to retain his appeal rights. That's why we are proceeding this way, and we are in fact ready to proceed." At sentencing, Bogguess' counsel clarified which issues he wished to reserve for appeal, saying:

"I would just like to reiterate our objection to the inclusion of his statements in any of the Court's decision making. Again, we are trying to preserve those issues for appeal as we have filed a motion to suppress his statements and of course that holds for the bench trial and all that as well."

The judge then restated the reservation of appellate rights:

"And I certainly don't mean to second guess you on this, Mr. Mueller, but in an abundance of caution, would I be correct in assuming that you are orally renewing all previous motions concerning the statements made by Mr. Bogguess during his interrogation or interview by both Detectives Fatkin and Craig and seeking to preserve all issues of that for appeal?"

The State did not object to Bogguess' counsel's clarifications or the court's observations, suggesting that everyone involved with this case knew which appellate rights Bogguess intended to reserve in his stipulation. On appeal, the State complains that there was no contemporaneous objection during the bench trial as required by K.S.A. 60-404 and that the stipulation of facts did not specifically reserve Bogguess' right to appeal the trial court's rulings at the *Jackson v. Denno* hearing or decision on the motion to suppress.

We have not considered this issue, but several Court of Appeals cases have allowed review of a decision on a motion to suppress despite the lack of a contemporaneous objection during a bench trial on stipulated facts. In *State v. Mansaw*, 32 Kan. App. 2d 1011, 1014, 93 P.3d 737, *aff'd* 279 Kan. 309, 109 P.3d 1211 (2005), the Court of Appeals stated:

"The written stipulation of facts submitted by the parties did not indicate that Mansaw was preserving the objections raised in his suppression motion. . . . [H]owever, the record reflects that the district court specifically advised Mansaw that he was not waiving his right to appeal the ruling on the suppression motion by agreeing to the trial upon stipulated facts. Accordingly, we find that Mansaw has properly preserved this issue for appeal."

In *State v. Robinson*, No. 90,113, 2004 WL 835866 (Kan. App. 2004) (unpublished opinion), the Court of Appeals put it this way:

"Here, Robinson properly filed her motion to dismiss, which was denied. However, when the State indicated it was asking the court to accept the suppression hearing testimony as evidence in the bench trial, there was no objection made by the defense. As a result, the State claims this court should not reach the merits of this case and dismiss for lack of jurisdiction.

"Jurisdictionally, this case presents an unusual series of events. Most certainly, there was no objection to the evidence presented during the bench trial. However, this statement begs the question since the State did not present any evidence at the bench trial other than to request the court to adopt the evidence from the motion to suppress heard literally moments earlier. The purpose of the contemporaneous objection rule is for the district court to rule on the suppressed evidence at trial and to reexamine the evidence and consider how the evidence has

played out. This purpose seems futile in the present situation. We will address Robinson's claims." *Robinson*, 2004 WL 835866, at *3.

In *State v. Bastian*, 37 Kan. App. 2d 156, 159-60, 150 P.3d 912 (2007), the Court of Appeals again rejected the State's attempt to apply K.S.A. 60-404 to prevent the admission of statements that had been contested on a motion to suppress when there was a bench trial on stipulated facts conducted by the same judge who heard the suppression hearing. While our court has not weighed in directly on this issue, older cases suggest that the contemporaneous objection rule is relaxed in a bench trial. *State v. Parson*, 226 Kan. 491, 493-94, 601 P.2d 680 (1979) (reviewing claims that evidence was improperly admitted despite the lack of a contemporaneous objection because the specific objections were raised in defendant's argument on the motion for judgment of acquittal at the close of the State's case).

In this case, both the trial court and the State knew that Bogguess objected to the admission of his statements made to the interviewing officers. Bogguess' counsel made it clear that Bogguess wished to reserve his right to appeal the trial court's decisions on these issues while proceeding to a bench trial on stipulated facts. While it would be better practice to include an express reservation in the stipulation, the failure to do so does not prevent our review.

When a bench trial consists solely of stipulated facts, there is no opportunity for the defendant to make a contemporaneous objection at trial to the admission of specific evidence. And when the bench trial is conducted by the same judge who presided over the hearing on the motion to suppress, there is no reason to rehash the same arguments when no additional evidence has been presented. The lack of a contemporaneous objection does not bar our review under these circumstances.

## *Jackson v. Denno* Hearing

Following his arrest, detectives interviewed Bogguess, who, over the course of 8 hours, made a number of incriminating statements. Bogguess filed a motion to suppress, challenging the voluntariness of his statements. The court held a hearing on his motion, at which the State presented evidence that Bogguess initially asserted his

right to remain silent after the officers read and explained his *Miranda* rights. Later, Bogguess requested that the detectives return. The officers reviewed his *Miranda* rights a second time before Bogguess waived his rights and made several statements.

The officers testified that Bogguess had told them he had used marijuana, Ecstasy, and alcohol, but that these substances were no longer affecting him as much. Bogguess took the stand at the suppression hearing. He testified about his significant drug use the day before and morning of Collins' death, some of which he had not revealed to the investigating officers at the time of his interview.

Bogguess described his arrest as involving eight or nine officers; the use of physical force, including pain techniques to make him comply with the officers; and the four taser injuries that left marks visible at the suppression hearing 14 months after his arrest. This testimony is generally consistent with the officers' versions of the arrest.

Bogguess testified that he requested an attorney when he was arrested. One officer testified that Bogguess asked what was going on so that he could inform an attorney, but indicated that Bogguess never said he wanted his attorney present or said he needed to call his attorney. Bogguess also testified that he requested multiple times to speak to his psychiatrist. Officers' testimony corroborates his testimony on this point.

Bogguess asked several officers questions about why they had taken him into custody, but they refused to answer his questions. After officers went over his *Miranda* rights, Bogguess signed a form stating that he did not want to speak to the officers. Bogguess testified that he eventually decided to waive his rights and speak to the officers because he did not feel that he had any other choice. He testified that he felt the only way he would get to leave the interview room was to tell the officers what they wanted to hear. He explained that his story changed throughout his statements as the officers gave him additional information to work into his story. At the end of Bogguess' direct testimony, he made the following statements:

"Q. Why did you ultimately talk to the officers?

"A. Because I felt in my heart that it was the only way I was ever going to get out of that room is to tell them what they wanted to hear.

"Q. Not what happened, but what they wanted to hear?

"A. That was ultimately what it was what they wanted to hear.

"Q. Now, you throughout the course of the interview, you changed what you were telling the officers. Why did you do that?

"A. Because the story that I made up at first wasn't quite fitting what they kept saying actually happened. So I was getting bits of information from them and going along with what they said happened.

"Q. And why did you do that?

"A. Because that was the way I felt that I was going to get out of the room."

On cross-examination, the State asked questions about the truth of the statements Bogguess made to the interviewing officers. Specifically, the State asked, "After you shot Mr. Collins in the head, where did you go?" and, "You've heard testimony that you drove to the south in the Hummer with you driving, that you then drove to the north, you drove over Mr. Collins and then went westbound on Lewis. Is that also your recollection as to your actions?"

Bogguess' counsel objected to these questions as beyond the scope of direct examination. Counsel argued that he had not opened the door to such questions and, if he had, he would like to strike those statements from Bogguess' testimony. The trial court and counsel discussed whether Bogguess' testimony during the suppression hearing would be admissible at trial and agreed that it would not be admissible in the State's case-in-chief, but would be available for rebuttal if Bogguess took the stand during trial. The trial court ruled that it was appropriate for the State to question Bogguess about the events of the day that were included in his statements to police to determine which statements he had made up in order to be allowed to leave the interview room. Bogguess' counsel objected to the ruling, and Bogguess asserted his Fifth Amendment privilege and refused to testify further. The trial court ruled that Bogguess had waived his Fifth Amendment privilege by testifying voluntarily on direct examination, found Bogguess in contempt, and struck Bogguess' testimony.

Kansas has not weighed in directly on the issue of whether a defendant can testify at a *Jackson v. Denno* hearing without waiving

his or her Fifth Amendment privilege. We have held that a defendant is entitled to a hearing outside the presence of the jury to determine whether the defendant's confession was voluntary and admissible. *State v. Miles*, 233 Kan. 286, 295, 662 P.2d 1227 (1983); but see *Pinto v. Pierce*, 389 U.S. 31, 32-33, 88 S. Ct. 192, 19 L. Ed. 2d 31 (1967) (hearing outside presence of jury is "prudent" but not required). In *Barnes v. State*, 204 Kan. 344, 345, 461 P.2d 782 (1969), the trial court refused to hear the defendant's testimony at a collateral proceeding to determine whether his confession was voluntary. The trial court ruled that the defendant's testimony could only be presented as a defense to the jury and if the defendant took the stand, he would be subject to cross-examination on anything related to the offense charged. We held this procedure violated *Jackson v. Denno*. 204 Kan. at 345-47

Bogguess argues that we should follow Texas in holding that a defendant may testify for a limited purpose at the hearing on a motion to suppress. *McCain v. State*, 995 S.W.2d 229, 236 (Tex. App. 1999). In *McCain*, the Texas Court of Appeals held that it was error to allow the prosecutor, at a hearing on a motion to suppress, to ask the defendant if he was in a car when it pulled up beside another car and whether the defendant shot at the car, though that error was eventually held to be harmless. *McCain*, 995 S.W.2d at 236-42.

The State responds by citing an Oregon case in which the defendant testified at the hearing on his motion to suppress that he felt trapped during the interview, rendering his confession involuntary. The prosecutor questioned the defendant as to why he felt trapped during the interview, suggesting that the defendant felt trapped by his lies rather than the officer's conduct. The defendant ultimately invoked his Fifth Amendment privilege because these questions went to the substance of the statements rather than the voluntariness of the statements. The trial court struck all of the defendant's testimony and denied the motion to suppress. The Oregon Court of Appeals affirmed. *State v. Lea*, 146 Or. App. 473, 481-86, 934 P.2d 460 (1997).

Texas is not the only state to limit cross-examination during a *Jackson v. Denno* hearing to determine the issue of voluntariness.

While not ruling on an identical situation, the Georgia Supreme Court clearly implied that the cross-examination of the defendant during a *Jackson v. Denno* hearing should be limited to the issue of voluntariness. *Marshall v. State*, 266 Ga. 304, 305-06, 466 S.E.2d 567 (1996). In *Powell v. State*, 540 So. 2d 13, 15-16 (Miss. 1989), the Supreme Court of Mississippi noted that the extensive cross-examination concerning the truthfulness of the defendant's statement was impermissible. In *People v. Huntley*, 46 Misc. 2d 209, 211, 259 N.Y.S.2d 369 (1965), the New York court specifically held that cross-examination on guilt or truth of the confession is not permitted. In *Jackson v. Denno*, the Court stated: "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession . . . ." *Jackson v. Denno*, 378 U.S. at 376.

At a *Jackson v. Denno* hearing, the issue before the trial court is whether the defendant's statement or confession was voluntary. The truthfulness of the statement is not at issue. The defendant may take the stand for the limited purpose of testifying about the events related to whether the statement was voluntarily made. Questions that go to the substance of the statements are outside the scope of a *Jackson v. Denno* hearing. Here, the trial court erred in ruling that Bogguess must answer questions about the events that were the bases for the crimes charged. The trial court further erred in striking all of Bogguess' testimony because Bogguess had a valid Fifth Amendment privilege.

Our analysis of the suppression issue does not end here, however. We now examine the trial court's ruling on the motion to suppress, including the testimony erroneously excluded by the trial court.

### Suppression of Bogguess' Confession

After hearing evidence and arguments from both sides, the trial court engaged in a lengthy consideration of the various factors that determine whether a custodial statement was voluntary. The trial court then denied Bogguess' motion to suppress. Our standard of review on a motion to suppress is twofold:

"Without reweighing the evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. The appellate court then reviews the ultimate legal conclusion regarding the suppression of evidence using a de novo standard." *State v. Woolverton,* 284 Kan. 59, 70, 159 P.3d 985 (2007).

"Several factors weigh upon the determination [of whether] a confession is voluntary, including the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation." *State v. Goodson,* 281 Kan. 913, 918, 135 P.3d 1116 (2006). Although the trial court erroneously struck Bogguess' testimony at the *Jackson v. Denno* hearing, the court went on to consider Bogguess' testimony when addressing these factors.

The trial court reviewed the interview tape as well as hearing testimony from Bogguess and the officers. The court acknowledged that Bogguess testified about drug and alcohol consumption the night before and day of the events, but found that Bogguess was responsive to officers' questions and indicated that whatever effect those substances had on him had worn off and he was lucid enough to speak to the officers. Because the tape did not have time stamps, the trial court estimated that the interrogation time was 4 to 5 hours, including several breaks or interruptions in the questioning, out of the entire 7 hours and 15 minutes detention. The court noted that Bogguess was provided with a meal and allowed to leave the room for a restroom break. The court considered Bogguess' request to speak to his psychiatrist and requests to be transported to jail, but did not find these factors particularly compelling. The trial court found that at the time of the interview, Bogguess was either 24 or 25 years old, had earned a GED, had been the defendant in five juvenile cases and two other criminal cases, had experience with law enforcement and custodial situations, and had experience and knowledge of the *Miranda* warnings and his right to remain silent. The trial court considered the conduct of the officers during the investigation and found that overall the officers were very fair.

In considering these factors, the trial court acknowledged part of Bogguess' testimony regarding his drug and alcohol use prior to his statements. Even if the remainder of Bogguess' testimony was included, substantial competent evidence supports the trial court's findings. A de novo review of the relevant factors leads to a conclusion that Bogguess' statements were voluntary and the trial court did not err in admitting the statements.

## TRIAL ISSUES

Bogguess raised two issues based on allegedly erroneous decisions the trial court made regarding the trial. First, Bogguess complains that the trial court erroneously denied his motion in limine to suppress certain statements made to officers that suggested he had engaged in prior criminal conduct. Second, Bogguess complains that the trial court erroneously denied his motion to sequester witnesses with regard to allowing Detective Mumma to sit at counsel table during trial to assist the prosecutor. These issues are moot because the case was tried on stipulated facts.

## MOTION TO DISQUALIFY TRIAL COUNSEL

Bogguess filed a pro se motion alleging that his counsel had a conflict of interest and was ineffective for failing to make closing arguments at the bench trial. The trial court heard arguments on these issues before sentencing Bogguess. We review a district court's refusal to appoint new counsel under an abuse of discretion standard. *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 (2007). We find an abuse of discretion when (1) no reasonable person would have taken the view adopted by the district court, (2) the district court's exercise of discretion was based on an error of law, or (3) the facts upon which the district court made the discretionary decision are not supported by substantial competent evidence in the record. *State v. Gonzalez*, 290 Kan. 747, 755-56, 234 P.3d 1 (2010).

"Furthermore, to warrant substitute counsel, a defendant must show 'justifiable dissatisfaction' with appointed counsel. Justifiable dissatisfaction includes a showing of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between counsel and the defendant. [Citation omitted.] But ultimately, ' "[a]s long as the trial court has a reasonable basis for believing the

attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel. [Citation omitted.]" ' [Citations omitted.]" *Sappington*, 285 Kan. at 166.

Before determining whether to appoint new counsel, the trial court must make some inquiry into the defendant's complaints. *Sappington*, 285 Kan. at 169. Here, the trial court held a hearing before sentencing at which it summarized the pro se motion and allowed Bogguess, his counsel, and the State to make statements and present arguments.

Bogguess alleged that his counsel had a conflict of interest because one of the State's witnesses was the cousin of an employee in his counsel's office. This witness worked at one of the stores where Bogguess used Collins' credit card to make a purchase. The prosecutor explained that the witness was on the list provided to defense counsel that the State did not intend to call at trial. The trial court listened to Bogguess' concerns and ultimately decided that there was no potential prejudice or conflict of interest.

Bogguess also complained that his counsel was ineffective in providing no closing argument at the bench trial. The trial judge noted that he presided over the bench trial on stipulated facts and that closing arguments are not evidence to be considered in determining guilt. The trial court ultimately decided that the allegations raised in the motion were wholly without merit and denied the motion.

For the reasons described above, the trial court had a reasonable basis for believing that the attorney-client relationship had not deteriorated to the point where appointed counsel could no longer give effective aid in the fair presentation of Bogguess' defense. The trial court did not abuse its discretion by refusing to appoint new counsel.

## SENTENCING ISSUES

Bogguess argues that it was error for the trial court to sentence him to the aggravated sentences for aggravated kidnapping, aggravated robbery, aggravated assault, and criminal possession of a firearm without a finding of the aggravating factors made by a jury.

Bogguess acknowledges that we have previously decided this issue, but raises it to preserve it for federal review. As we noted in *State v. Johnson*, 286 Kan. 824, 842, 190 P.3d 207 (2008), we have consistently found that a sentence that falls within the grid box is constitutional and may be considered a presumptive sentence; therefore, the appellate courts lack jurisdiction to consider such sentences.

Bogguess also argues that because his prior convictions were not included in the complaint or proved to a jury beyond a reasonable doubt, the use of his criminal history score in sentencing violates *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435, (2000). Bogguess acknowledges that we have previously decided this issue adversely to his position, but seeks to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 47-48, 41 P.3d 781 (2002).

### 05-CR-1366

At sentencing in the present case, Bogguess requested through counsel modification of his sentence in an unrelated case, 05-CR-1366, a case for which he was on probation when he committed the offenses to which he stipulated in the present appeal. The trial court denied the request. Bogguess now seeks appellate review of that ruling, but this court lacks jurisdiction to consider this issue.

In that case, Bogguess pleaded guilty to theft and fleeing or attempting to elude an officer. On October 24, 2005, the Sedgwick County District Court sentenced him to 24 months probation, with an underlying prison term of 33 months, followed by 12 months of postrelease supervision. On two subsequent occasions, Bogguess stipulated to probation violations, and the district court reinstated probation. *State v. Bogguess*, No. 103,244, 2010 WL 3666183 (Kan. App. 2010) (unpublished opinion). Following his convictions in the present case, on September 11, 2009, the trial court revoked probation in 05-CR-1366 and imposed the original sentence. Through counsel, Bogguess requested that the court consider modification of the 05-CR-1366 sentence, and the court denied that request.

The revocation and imposition of sentence took place at the same hearing at which the trial court sentenced Bogguess in the

present case. Bogguess filed a separate timely notice of appeal from his sentence in 05-CR-1366 on September 15, 2009, and his appeal was docketed in the Court of Appeals on November 2, 2009. On September 10, 2010, the Court of Appeals filed an unpublished opinion affirming the probation revocation and imposition of original sentence. *Bogguess*, 2010 WL 3666183. Bogguess did not file a petition for review. Bogguess now asks this court to review the sentence imposed in a different case, one which he did not appeal to this court and for which the Court of Appeals has already issued a mandate.

An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. *State v. Ehrlich*, 286 Kan. 923, 926, 189 P.3d 491 (2008); *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004). In order to perfect an appeal, an appellant must file a docketing statement. Supreme Court Rule 2.041(a) (2010 Kan. Ct. R. Annot. 14).

In the present case, both the notice of appeal and the docketing statement identified only case 08-CR-1506—the present murder, kidnapping, robbery, assault, and possession of firearm appeal— and the docketing statement described facts and issues that only related to case 08-CR-1506. In fact, the docketing statement informed this court that no other case pending or about to be filed in the Kansas appellate courts arose from the same case or controversy as this appeal or involved an issue similar or related to an issue in this appeal. We do not have jurisdiction over this issue.

Affirmed in part and dismissed in part.